The FAIR HOUSING COUNCIL OF GREATER WASHINGTON, Plaintiff–Appellant,

and

Marita Turner, Plaintiff,

v.

Nathan LANDOW; Landow & Company, Defendants–Appellees,

and

Ruby Groak, Defendant.

The FAIR HOUSING COUNCIL OF GREATER WASHINGTON, Plaintiff–Appellee,

and

Marita Turner, Plaintiff,

v.

Nathan LANDOW; Landow & Company, Defendants–Appellants,

and

Ruby Groak, Defendant.

Nos. 92-2425, 92-2426.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1993.

Decided July 14, 1993.

Roger E. Warin, Steptoe & Johnson, Washington, DC, argued (Charles F. Monk, Diane Hollenshead Copes, Steptoe & Johnson, John P. Relman, Washington Lawyers'

Committee for Civ. Rights Under Law, on brief), for appellant.

David Robert Boyd, COMEY & BOYD, Washington, DC, argued (Eugene J. Comey, David Ledecky, Comey & Boyd, on brief), for appellees.

Before WILKINSON and HAMILTON, Circuit Judges, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

## OPINION

HAMILTON, Circuit Judge:

The Fair Housing Council of Greater Washington (the FHC) appeals the judgment of the district court awarding it only $20,000 in attorneys' fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The FHC contends the district court abused its discretion by awarding such a small amount without first providing detailed findings. Nathan Landow and Landow & Company (Landow) cross appeal the attorneys' fee award, arguing that the district court should have denied the FHC's fee petition in its entirety because the FHC requested an exorbitant amount of fees.

We agree that the amount of attorneys' fees which the FHC sought to recover was so outrageously excessive so as to shock the conscience of the court and, therefore, a complete denial of any fee award is justified. Thus, we reverse the $20,000 attorneys' fee award and remand to the district court with instructions to enter judgment denying the FHC's request for attorneys' fees in its entirety.

## I

This appeal stems from the FHC's Motion for an Award of Attorneys' Fees and Expenses, filed soon after the FHC prevailed on part of its claims against Landow. In December 1986, the FHC and Christal Murray filed suit against Landow, alleging several violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982.[1] The complaint essentially alleged that Landow, as the owner of a residential apartment building in Bethesda, Maryland, and its employees, discriminated against Murray because of her race when offering rental housing opportunities.

The parties settled the *Murray* action before it proceeded to trial. The settlement agreement consisted of two basic elements: (1) a $20,000 "contribution" by Landow to the FHC, and (2) a promise or commitment by Landow to (a) refrain from violating the Fair Housing Act and (b) take various actions, including the education of certain employees and supplying certain information to the FHC. The settlement agreement did not specify whether Landow confessed to any discriminatory practices and did not include any recognition of Landow's liability for legal fees and expenses. Moreover, the settlement agreement was not filed with the court and never constituted any type of consent decree or court order. Thus, after the parties executed the settlement agreement, the *Murray* case was dismissed with prejudice, the parties bearing their own respective costs and attorneys' fees.

In February 1988, the FHC again filed suit against Landow. The initial complaint contained two causes of action: (1) breach of the prior settlement agreement, and (2) violations of the Fair Housing Act and Civil Rights Act resulting from allegedly discriminatory treatment of Marita Turner by Landow and its employees.[2] Within the first cause of action, the FHC alleged that Landow breached the settlement agreement by: (a) discriminating against blacks, and (b) failing to perform various affirmative acts required by the settlement agreement.

During pretrial preparation and the five day bench trial, the FHC devoted the overwhelming majority of its time attempting to establish that Landow discriminated against blacks in providing housing opportunities. Following the trial, the district court found that the FHC failed to establish any discrimination by Landow or its employees. The

---

1. The parties refer to this litigation as "the *Murray* action."

2. The parties refer to this litigation as "the *Turner* action."

district court, therefore, rejected the FHC's second cause of action and part (a) of the first cause of action alleging discrimination. However, the district court did find that Landow breached the settlement agreement by failing to perform certain required affirmative acts specified in the settlement agreement. Thus, the district court ruled in favor of the FHC on *only* part (b) of its first cause of action.

Although the FHC had requested compensatory and punitive damages, as well as specific performance and injunctive relief under its first cause of action, the district court granted the FHC only specific performance by entering an order requiring Landow to comply with all of the terms of the settlement agreement for a two year term. The district court denied the other forms of requested relief, reasoning that the FHC had not proved any damages resulting from this breach of the settlement agreement. The district court also expressly denied the FHC's request for attorneys' fees in connection with the cause of action for breach of the settlement agreement, reasoning that Maryland law did not authorize the award of attorneys' fees to a prevailing plaintiff in a simple contract case.

Following the district court's substantive decision in the *Turner* action, the FHC filed a motion requesting an award of attorneys' fees and expenses pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. In this motion, the FHC claimed it had incurred approximately $604,-113 in attorneys' fees and expenses, but only sought to recover $537,113, excluding an unitemized $67,000 in fees not attributable to the claims on which it prevailed.[3] However, the FHC's records for the billable hours spent during the entire *Turner* litigation did not identify the type of work and resulting fees which the FHC excluded from its fee request. In addition, the fee request failed to allocate the fees attributable to each claim against Landow. Instead, the FHC's time sheets provided only general descriptions of the work performed. For example, several items contained in the FHC's fee request

included: 4.5 hours for "review discovery and draft discovery"; 4.75 hours for "preparation of answers to interrogatories"; and 4.75 hours for "document production." (*See generally*, Joint Appendix (J.A.) 867–95).

In reviewing the FHC's fee request, the district court first held that the FHC could recover attorneys' fees under 42 U.S.C. § 1988 as a "prevailing party."[4] When addressing the amount of fees which the FHC sought to recover, the district court observed "if there are motions for attorneys' fees and expenses that should be disallowed in their entirety simply because of the outrageously excessive amount requested, the pending motion would fit the bill." (J.A. 1118). However, because the district court "believe[d] that the United States Court of Appeals for the Fourth Circuit would determine that a denial of any legal fees would constitute an abuse of discretion," the district court refused to deny the fee request in its entirety. (J.A. 1125). Nevertheless, the district court specifically noted "should this matter be appealed and the appellate court find that this court had discretion to deny all legal fees here, the award of legal fees made herein should be rescinded without remand." *Id.*

In determining the appropriate amount of fees to be awarded, the district court refused to rely on the time sheets submitted by the FHC, opining "plaintiff's submitted professional time estimates are so grossly in excess of any realistic amount as to be unworthy of consideration, even as a starting point." (J.A. 1125). Because "[t]he breach of contract dispute, as it related to Landow's failures[,] was relatively simple and straightforward," the district court determined the appropriate fee award by estimating the amount of fees that would have been incurred for a "comparable simple contract dispute of less than two days' duration." *Id.* The district court estimated that such fees would total $20,000 and, therefore, awarded the FHC that amount in attorneys' fees.

The FHC now appeals the $20,000 attorneys' fee award. In response, Landow ap-

---

3. This request also included fees incurred in litigating FHC's entitlement to fees.

4. Landow does not challenge this holding on appeal.

peals the district court's refusal to deny the fee request in its entirety.

## II

■ In its cross appeal, Landow contends that a district court has the discretion to deny a request for attorneys' fees in its entirety when the amount of the request is "grossly excessive." (Appellee's Brief at 15). In support, Landow relies primarily on *Sun Publishing Company, Inc. v. Mecklenburg News, Inc.,* 823 F.2d 818, 819 (4th Cir.1987), where this court recognized that "a request for attorney's fees, which is so exorbitant as to shock the conscience of the court, may be denied without a [detailed analysis]." In response, the FHC claims that *Sun Publishing* only applies to antitrust litigation and, in civil rights litigation, a district court may not deny a fee request in its entirety merely because it is excessive. In support, the FHC relies on *Disabled in Action v. Mayor & City Council,* 685 F.2d 881, 883 (4th Cir.1982), where this court announced:

> [A]n item of a fee claim may not be refused in its entirety on the grounds that it is excessive. Rather the court should withhold fees in respect of such an item only to the extent of the excess, while granting a fee to the extent the item reflects time and effort reasonably expended by counsel.

We find Landow's argument more persuasive.

In civil rights litigation, 42 U.S.C. § 1988 states, in relevant part, "the court, in its discretion, *may* allow the prevailing party ... a reasonable attorney's fee...." (emphasis added). As part of this discretion, other circuits allow a district court to deny a request for attorneys' fees in its entirety when the amount of fees requested by the prevailing party is so outrageously excessive as to shock the conscience of the court. The leading case on this issue arose out of the Seventh Circuit. *Brown v. Stackler,* 612 F.2d 1057 (7th Cir.1980).

In that case, Brown's § 1983 claim sought to enjoin enforcement of an Illinois statute.

At the time Brown filed suit, a challenge to a similar statute in Virginia was pending before the Supreme Court. After the Supreme Court rendered its decision, the district court in *Stackler* entered judgment in favor of Brown and granted leave to file a petition for attorneys' fees pursuant to 42 U.S.C. § 1988. Brown's counsel then submitted a bill for over 800 hours of billable time. The district court found the fee request to have been inflated to an intolerable degree and denied all fees.

On appeal, the Seventh Circuit affirmed, reasoning that it was unreasonable to expend 800 hours on such a simple case which required little legal skill. The court specifically rejected the notion that the district court should, *sua sponte*, determine the appropriate amount of fees when presented with an "outrageously unreasonable request." *Id.* at 1059. Specifically, the court opined:

> If, as appellant argues, the court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful....

*Id.* At least one other circuit adopted this principle in the civil rights context. *Lewis v. Kendrick,* 944 F.2d 949, 957–58 (1st Cir.1991) (When plaintiff prevailed on minor portion of claim, failure to separate fees for factually separate claims warranted total denial of attorneys' fees.).

We find the rationale of the *Stackler* court very persuasive in the context of the circumstances of the instant fee petition. Thus, we hold that a district court may, in its discretion, deny a request for attorneys' fees in its entirety when the request, submitted pursuant to 42 U.S.C. § 1988, is so outrageously excessive it "shock[s] the conscience of the court." *Sun Publishing,* 823 F.2d at 819.[5]

---

5. We also believe this holding does not conflict with *Disabled in Action,* 685 F.2d at 886. The *Disabled in Action* court did not address situations where the fee request is so outrageously

excessive it "shock[s] the conscience of the court." *Sun Publishing,* 823 F.2d at 819. Instead, the district court in that case only found that the original fee request included items that

In reaching this conclusion, we reject the FHC's claim that a total denial of attorneys' fees is inappropriate in civil rights litigation because of the need to "encourage able attorneys to represent meritorious civil rights claimants with relatively small damage claims." (Appellant's Reply and Answering Brief at 14) (quotation and citation omitted). We believe the rule adopted today does not encroach on this laudable goal in the slightest. It simply telegraphs a signal to attorneys, such as those representing the FHC before us, to act responsibly when submitting petitions for attorneys' fees. Therefore, we join the First and Seventh Circuits in recognizing discretion in the district courts to deny a fee request in its entirety in civil rights litigation when the amount requested is so excessive it shocks the conscience of the court.

### III

█ In the present case, the question still remains whether the district court would be justified in denying the FHC's fee request in its entirety. Because of the FHC's woefully inadequate time records, coupled with its failure to make a good faith effort to exclude fees attributable to unsuccessful claims, we think the FHC's fee petition was so outrageously excessive it shocked the conscience of the court, a conclusion readily announced by the court below. Thus, we believe a complete denial of the FHC's fee petition would be justified.

█ In determining the amount of attorneys' fees which a prevailing party may recover under 42 U.S.C. § 1988, the district court must consider "the degree of the plaintiff's overall success." *Farrar v. Hobby,* — U.S. ——, ——, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992). Thus, if the plaintiff only succeeded on claims that encompassed "distinctly different . . . facts and legal theories," from the claims on which the plaintiff lost, the "work on [the] unsuccessful claim[s] cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

were "excessive, unnecessary and unreason-

Moreover, "if the district court determines that the unsuccessful claims . . . were indeed unrelated to the successful ones, the burden of showing which hours are recoverable for work on the successful claims will of course rest with the fee applicant." *Buffington v. Baltimore County,* 913 F.2d 113, 128 (4th Cir.), *reh'g denied* (1990). In addition, "the court is entitled to expect that the applicant's records will provide some guidance in identifying recoverable hours." *Id.*

█ Thus, the "fee applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941 (footnote omitted). In addition, the plaintiff may not submit a fee request which is merely an opening bid in the quest for an award. *Kendrick,* 949 F.2d at 958. Thus, when the plaintiff prevails on only some claims which are factually and legally distinct from the unsuccessful claims, the plaintiff must make some reasonable effort to weed out the fees incurred on claims it lost at trial. *Buffington,* 913 F.2d at 128.

█ According to these principles, we can outline the appropriate tack a fee applicant should follow when seeking to recover attorneys' fees pursuant to 42 U.S.C. § 1988. First, the applicant must make every effort to submit time records which specifically allocate the time spent on each claim. Second, those records should attempt to specifically describe the work which the fee applicant allocated to unsuccessful claims so as to assist the district court in determining the reasonableness of the fee request. In establishing these guidelines, we recognize that some claims may have such a common core of facts and legal theories so as to prevent any allocation of the fees to the applicant's separate claims. However, we hereby admonish all parties that a blind adherence to this argument runs the risk of incurring a complete denial of fees.

█ Only after the fee applicant complies with his burden must the district court make specific findings as to the appropriate fee award. When the fee application fails to

able." *Disabled in Action,* 685 F.2d at 886.

meet these requirements, but instead requests one lump sum so outrageously excessive it "shock[s] the conscience of the court," the district court should, in the proper exercise of its discretion, deny the fee request in its entirety. *Sun Publishing Co.*, 823 F.2d at 819.

In the present case, the FHC's fee petition fails to satisfy any of these requirements. The claims on which the FHC prevailed, *i.e.*, the breach of the settlement agreement, contained clearly distinct facts and legal theories from those referred to in the FHC's unsuccessful claims, *i.e.*, discrimination. Specifically, the partial breach of the settlement agreement claim on which the FHC prevailed *only* required the FHC to prove that: (1) the agreement was valid and binding, and (2) Landow failed to comply with certain affirmative requirements of the agreement. The only facts and legal theories common to the FHC's two causes of action related to Landow's alleged discrimination, a claim on which the FHC did not prevail.

Because the FHC prevailed on only a portion of its claims and the successful claims were legally and factually distinct from the unsuccessful claims, the FHC had a duty to make some reasonable effort to weed out the fees relating to the unsuccessful claims. Despite this duty, the FHC only excluded a paltry $67,000 of unitemized fees from its petition. Moreover, the time sheets submitted with the FHC's fee petition provided no guidance for the district court to determine which fees the FHC should recover. Instead, the FHC's time records contained only general descriptions of the work performed without any allocation of the attorneys' fees attributable to the separate claims against Landow. In addition, these time sheets failed to identify the work which generated the $67,000 in legal fees the FHC excluded from its fee request.

At oral argument, the FHC defended its time sheets on the basis that the district court has the burden to identify which hours in a fee applicant's time sheets are recoverable. We find this argument repugnant to *Buffington*, where this court held "the burden of showing which hours are recoverable ... will of course rest with the fee applicant, and the court is entitled to expect that the applicant's time records will provide some guidance in identifying the recoverable hours." Moreover, the FHC's argument conflicts with *Stackler*, 612 F.2d at 1059, where the Seventh Circuit recognized that a district court does not have to determine a reasonable fee "when an outrageously unreasonable one has been asked for...." Finally, we think the FHC's argument would encourage fee requests which are nothing more than "an opening [bid] in negotiations to reach an ultimate result." *Kendrick*, 944 F.2d at 958. District Courts are not open to such gaming on the part of litigants.

In summary, the fee petition in the present case contained several serious deficiencies. First, despite obtaining only limited success, the FHC excluded only a small portion of its fees from its petition and sought to recover an amount of fees so outrageously excessive it shocked the conscience of the court. Second, the FHC submitted a fee application which failed to specifically allocate the amount of fees attributable to the distinct claims on which it prevailed or to detail the fees which the FHC excluded from its petition. These factors give us every indication that the attorneys representing the FHC intended to submit an outrageously excessive fee petition in the hope that the district court would at least award some, preferably high, percentage of the requested fees. We believe Congress did not intend to foster such gamesmanship when it enacted the Civil Rights Attorney's Fees Awards Act of 1976. Rather, the clear intent of Congress was to provide only *reasonable* fees to prevailing parties. Our decision today seeks to further that purpose by encouraging attorneys at the outset to request only reasonable fees and to provide the necessary assistance to the district court for determining a reasonable fee. In the present case, because the FHC's fee petition completely ignored these principles, we think the district court would not have abused its discretion by denying the FHC's fee request in its entirety. We, therefore, accept the district court's invitation to deny the FHC's fee request completely.

## IV

For the reasons stated herein, we reverse the award of $20,000 in attorneys' fees in favor of the FHC and remand to the district court with instructions to enter judgment denying the FHC's fee request in its entirety.

REVERSED AND REMANDED WITH INSTRUCTIONS.