PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PATRICK V. MORRIS, Individually and
on behalf of all others similarly
situated,

*Plaintiff-Appellee,*

v.

WACHOVIA SECURITIES, INCORPORATED,
*Defendant-Appellant.*

No. 05-1217

PATRICK V. MORRIS, Individually and
on behalf of all others similarly
situated,

*Plaintiff-Appellant,*

v.

WACHOVIA SECURITIES, INCORPORATED,
*Defendant-Appellee.*

No. 05-1281

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-02-797-3)

Argued: February 1, 2006

Decided: May 17, 2006

Before MICHAEL, SHEDD, and DUNCAN, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded with instructions by
published opinion. Judge Michael wrote the opinion, in which Judge
Shedd and Judge Duncan joined.

**COUNSEL**

**ARGUED:** James Alwin Murphy, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellant/Cross-Appellee Wachovia Securities, Incorporated. Arthur Raphael Miller, HARVARD LAW SCHOOL, Cambridge, Massachusetts, for Appellee/Cross-Appellant Patrick V. Morris, Individually and on behalf of all others similarly situated. **ON BRIEF:** Cameron S. Matheson, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellant/Cross-Appellee. Mark J. Krudys, Richmond, Virginia; Peter G. A. Safirstein, MILBERG, WEISS, BERSHAD & SCHULMAN, L.L.P., New York, New York, for Appellee/Cross-Appellant.

---

**OPINION**

MICHAEL, Circuit Judge:

An individual investor's securities fraud claims against a brokerage firm were rejected when the district court granted the firm a summary judgment and dismissal. The firm then invoked a provision of the Private Securities Litigation Reform Act of 1995 (Act or Reform Act), 15 U.S.C. § 78u-4(c), contending that the investor's complaints and briefs violated Federal Rule of Civil Procedure 11(b) and that monetary sanctions were mandated. The district court found three Rule 11(b) violations, one in the investor's complaints and two in his brief opposing summary judgment. The court, however, declined to impose any sanctions. Both sides appeal. We affirm for the most part, but vacate the district court's order to the extent that it imposed no sanction at all. The Reform Act mandates a sanction in any private securities action where a party or lawyer violates Rule 11(b). Accordingly, we remand for the district court to enter an order that identifies and admonishes the lawyers responsible for the three Rule 11(b) violations committed in this action.

I.

Patrick V. Morris owned shares of The Proctor & Gamble Co. worth about $1.6 million when he retired from the company in 1999.

Morris decided to sell the shares and invest the proceeds in a diversified retirement portfolio. In December 2001 he invested roughly $1.4 million with the Masters Program, an investment service offered by Wachovia Securities, Inc. The Masters Program allows investors with more than $100,000 to have their portfolios handled by money managers who usually work with accounts exceeding $1 million. Wachovia describes participation in the program as involving three steps: first, a Wachovia financial advisor helps the investor choose an investment strategy; second, the advisor recommends money managers who will implement the strategy by selecting and monitoring suitable securities; and third, the advisor and the investor periodically assess investment results.

Morris selected five money managers who had contracted with Wachovia to participate in the program. Morris signed several documents disclosing numerous fees associated with the program. Contrary to his expectations, Morris's initial account balance of approximately $1.4 million decreased by $300,000, or 21 percent, within "several months." *Morris v. Wachovia Sec., Inc.*, 277 F. Supp. 2d 622, 626 (E.D. Va. 2003).

A.

In November 2002 Morris sued Wachovia in the U.S. District Court for the Eastern District of Virginia. His complaint attributed his losses to Wachovia's operation of the Masters Program in violation of the securities laws (specifically, section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and the Securities and Exchange Commission's Rules 10b-5 and 10b-10). Morris amended his original complaint as a matter of right. *See* Fed. R. Civ. P. 15. The district court granted Wachovia's motion to dismiss the first amended complaint without prejudice, and Morris then filed his second amended complaint. *Morris*, 277 F. Supp. 2d at 625. Wachovia filed a counterclaim against Morris seeking indemnity under one of the parties' agreements.

Among the allegations contained in the first amended complaint, but not the second amended one, was that Wachovia never disclosed that the firm profited by lending to third parties stocks held in Morris's account. SEC rules sharply constrain such lending, but permit it

for stocks held by investors who have bought on margin. *See* 17 C.F.R. § 240.8c-1. Morris never bought any stocks on margin. His lawyers based the stock loan allegation on the knowledge that such lending takes place generally in the securities industry, but they had no evidence that Wachovia had lent any of Morris's stocks to third parties. The district court later determined that the stock loan allegation violated Rule 11(b).

The second amended complaint contained numerous claims under section 10(b) of the Exchange Act and section 206 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6. The district court grouped the section 10(b) claims into four categories: (1) claims involving selection and monitoring of money managers; (2) those involving aggregation of trades; (3) those involving rounding up and passing along SEC fees to investors; and (4) those involving misrepresentation of securities prices and the failure to provide adequate periodic account information. *Morris*, 277 F. Supp. 2d at 630-31. In August 2003 the district court granted Wachovia's motion to dismiss the claims in the first three categories, concluding that Morris did not satisfy the elements of a claim for relief under section 10(b) of the Exchange Act. *Id.* at 633, 637-38. The court allowed Morris to proceed with his section 10(b) claim as to the fourth category and with his Investment Advisers Act claim. *Id.* at 641-42, 644-45. Morris moved to certify a class action for money damages under Rule 23(b)(3) based on his surviving claims. The district court concluded that the common issues did not predominate over the individual ones and denied certification. *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 304 (E.D. Va. 2004).

### B.

Wachovia moved for summary judgment. In his brief opposing Wachovia's motion, Morris (through counsel) made two contentions that the district court later determined were Rule 11(b) violations. The first contention concerned the deposition of Charles W. Baldiswieler, an executive at TCW Investment Management Co., one of the five money managers Morris selected. At one point in his deposition Baldiswieler was asked about a Wachovia questionnaire to TCW that used the phrase "commission recapture program." J.A. 1051. Baldiswieler testified that the phrase could have been a reference to a "soft

dollar arrangement." *Id.* Under such an arrangement an investment adviser directs its clients' brokerage transactions to a broker-dealer in exchange for products and services (other than transaction execution) ranging from research reports to client referrals. *See* U.S. Securities & Exchange Commission, *Inspection Report on the Soft Dollar Practices of Broker-Dealers, Investment Advisers and Mutual Funds* at Part II.A (Sept. 22, 1998) *available at* http://www.sec.gov/news/studies/softdolr.htm.

However, Baldiswieler also testified in his deposition, "I believe Wachovia is not a soft dollar broker. . . . I don't believe they even have the apparatus to do soft dollars." J.A. 1052. Morris's brief quoted Baldiswieler's more tentative comment about soft dollars and argued that "[t]he logical and reasonable inference to be drawn" from this and other facts was that Wachovia selected only those money managers who would help Wachovia earn trade execution income, not those who would maximize client returns. J.A. 646. The brief never pointed out that Baldiswieler said specifically that he did not believe Wachovia was a soft dollar broker.

The second problematic contention in Morris's brief opposing summary judgment concerned the deposition of Wachovia executive Burt White. White described himself as "the only door that gets money managers into the Masters Program." J.A. 425. Asked whether Wachovia had any controls or policies "to ensure that financial advisors are paying attention to the portfolio construction in a way that maximizes their returns for the investors," White replied, "I don't know if there are any controls or not." J.A. 1026-27. Morris's brief cited this testimony as supporting the assertion that "Wachovia had no systems or controls in place to assure that the results of any research [on money manager performance] was received by . . . any financial advisors who were placing customers in the Masters Program." J.A. 652. White's lack of awareness about whether there were any controls for the review of investor accounts by Wachovia financial advisors, however, had little bearing on the claim that the advisors had no information about the performance records of the money managers they were recommending.

The district court granted Wachovia summary judgment as to all of Morris's remaining claims on August 2, 2004. On the same day, the

district court entered an order dismissing Wachovia's counterclaim that had been based on Morris's express waiver of receipt of trade confirmation slips. A provision in the waiver purported to obligate Morris to indemnify Wachovia for any expenses arising from Wachovia's actions based on the waiver. The court concluded that the indemnity provision neither applied to Morris's suit nor complied with Virginia's rule "that indemnity against one's own wrongdoing must be clearly set forth in the contract." J.A. 1631.

C.

Although the summary judgment and dismissal order terminated the case on the merits, the district court did not make specific findings "upon [the] final adjudication" as to whether all parties and lawyers had complied with the anti-abuse requirements of Rule 11(b), as the Reform Act requires. On August 6, 2004, Wachovia moved to alter or amend the judgment, *see* Rule 59(e), to include these findings and to obtain Reform Act sanctions against Morris for alleged Rule 11(b) violations. *See* 15 U.S.C. § 78u-4(c). Morris, in turn, moved for sanctions based on Wachovia's counterclaim.

Wachovia requested that the district court "direct [it] to submit its affidavit of costs and attorneys' fees incurred in defending this action." Reply Br. at 28-29. At the sanctions hearing on November 8, 2004, the district court noted that Wachovia had not submitted any actual evidence of its fees. Later that week Wachovia's counsel submitted an affidavit listing the fees by generic procedural stages of the case, for example, "Class Certification Motion" and "Document Discovery." The affidavit named the lawyers or paralegals who worked on each stage, their hourly rates, hours billed on the stage, and the total amount billed. Morris moved to strike this affidavit as untimely presented.

In a memorandum opinion filed on January 28, 2005, the district court found (as noted above) three Rule 11(b) violations by Morris's counsel: the unsubstantiated stock loan claim in the original and first amended complaints, the selective citation of Baldiswieler's testimony in the brief opposing summary judgment, and the mischaracterization of White's testimony in that same brief. The district court concluded, however, that these violations did not merit the award of

monetary sanctions. The court held that the other instances of misconduct alleged by Wachovia were not Rule 11(b) violations and did not merit sanctions. The court therefore denied Wachovia's motion to alter the judgment to impose sanctions and denied as moot Morris's motion to strike the fee affidavit. Finally, the court denied Morris's motion for sanctions, concluding that Wachovia had not violated Rule 11(b) in filing its counterclaim. Wachovia appeals and Morris cross-appeals.

## II.

Title I of the Reform Act, Pub. L. No. 104-67, 109 Stat. 737 (1995), "represents Congress' effort to curb . . . perceived abuses" in securities fraud suits through provisions that, among other things, "mandate imposition of sanctions for frivolous litigation." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1511 (2006). In particular, the Act alters the consequences of Rule 11(b) violations in private actions under the Exchange Act. *See* 15 U.S.C. § 78u-4(c). The Act nevertheless leaves Rule 11(b)'s architecture intact. For its part, Rule 11(b) "requires that an attorney conduct a reasonable investigation of the factual and legal basis for his claim before filing." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). An overview of the Act and Rule 11(b) brings the parties' specific contentions into focus.

At the end of a private securities fraud action, the district court must evaluate on the record whether each party and lawyer complied with Rule 11(b) "as to any complaint, responsive pleading, or dispositive motion" filed. 15 U.S.C. § 78u-4(c)(1). Before finding that a party or lawyer has violated Rule 11(b), the district court must provide the potential violator with "notice and an opportunity to respond." *Id.* § 78u-4(c)(2). If the district court goes on to find a Rule 11(b) violation, the Act provides that "the court shall impose sanctions" on the offender. *Id.* Because the sanctions "instruction comes in terms of the mandatory 'shall,' which normally creates an obligation impervious to judicial discretion," *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998), the district court must impose sanctions for each violation found. Also, the Act applies to any action with a claim arising under Chapter 2B of Title 15 of the

U.S. Code, 15 U.S.C. § 78a *et seq.*, so the Rule 11(b) inquiry is mandatory even if other claims in the action arise under other laws.

The Act guides the district court's selection of a sanction. When the abuse being punished is a Rule 11(b) violation in "any responsive pleading or dispositive motion," the Act establishes a rebuttable presumption that the "appropriate sanction," 15 U.S.C. § 78u-4(c)(3)(A), is "an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* § 78u-4(c)(3)(A)(i). When the abuse is the "substantial failure of any complaint" to satisfy Rule 11(b), the Act establishes a rebuttable presumption that the proper sanction "is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." *Id.* § 78u-4(c)(3)(A)(ii). These presumptions are rebutted if the party or lawyer to be sanctioned proves either (1) that the statutory award would "impose an unreasonable burden" on the offending party or lawyer and that "fail[ing] to make such an award would not impose a greater harm on the party" seeking sanctions, *id.* § 78u-4(c)(3)(B)(i), or (2) that the Rule 11(b) violation being punished "was de minimis," *id.* § 78u-4(c)(3)(B)(ii). If the presumption is rebutted, then "the court shall award the sanctions that the court deems appropriate pursuant to [Rule 11]." 15 U.S.C. § 78u-4(c)(3)(C).

Thus, for private securities fraud suits Congress altered the consequences of a Rule 11(b) violation but did not rewrite the conventional standards for evaluating Rule 11(b) compliance. *Dellastatious v. Williams*, 242 F.3d 191, 197 n.5 (4th Cir. 2001) (quoting *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)). Those standards continue to apply.

Rule 11(b) provides in part that when a lawyer "present[s] to the court" a pleading, motion, or "other paper," the lawyer on penalty of sanctions certifies two things "to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." First, the lawyer certifies that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). Second, the lawyer certifies that "the allegations and other

factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).

A legal argument fails to satisfy Rule 11(b)(2) when "in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (punctuation omitted). "The legal argument must have absolutely no chance of success under the existing precedent" to contravene the rule. *Id.* (punctuation omitted). Factual allegations fail to satisfy Rule 11(b)(3) when they are "unsupported by *any* information obtained prior to filing." *Brubaker*, 943 F.2d at 1373.

By the time a case reaches the final order stage, the district court has acquired unique familiarity with the conduct of the parties and their lawyers. That familiarity explains why our review of "all aspects" of a district court's Rule 11 determination is for abuse of discretion. *In re Kunstler*, 914 F.2d 505, 513 (4th Cir. 1990). Nothing in the Reform Act's sanctions provision changes this standard of review. Moreover, the Supreme Court has reasoned that review of Rule 11 decisions for abuse of discretion "discourage[s] litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990).

A district court has abused its discretion if its decision "is guided by erroneous legal principles" or "rests upon a clearly erroneous factual finding." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). We do not ask whether we would have come to the same conclusion as the district court if we were examining the matter *de novo*. *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs.*, 57 F.3d 1215, 1223 (3d Cir. 1995). Rather, after reviewing the record and the reasons the district court offered for its decision, we reverse for abuse of discretion if we form "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Westberry*, 178 F.3d at 261 (punctuation omitted).

### III.

Wachovia first challenges the district court's evaluation of Morris's complaints. 15 U.S.C. § 78u-4(c)(3)(A)(ii). Wachovia contends that,

notwithstanding the district court's conclusion to the contrary, the complaints "substantial[ly] fail[ed]" to comply with Rule 11(b), and this failure required the district court to presume that the appropriate sanction was an award of Wachovia's full attorney fees and costs. *Id.* Wachovia further insists that the Rule 11(b) violation was not de minimis. *Id.* § 78u-4(c)(3)(B)(ii). To prevail on its argument about Morris's complaints, Wachovia must show one of two things: (A) the single Rule 11(b) violation found in the complaints (namely, the stock loan claim, *see supra* part I.A.) warranted monetary sanctions, or (B) certain other claims in the complaints were Rule 11(b) violations so serious as to require an award of fees and costs.

### A.

The district court held that "Morris' counsel lacked a sufficient factual basis to include the stock loaning allegation in the [first amended complaint]." J.A. 1628. The allegation, in other words, was "unsupported by *any* information obtained prior to filing" in contravention of Rule 11(b). *Brubaker*, 943 F.2d at 1373. The court then found that this Rule 11(b) violation in the first amended complaint did not compel an award of fees and costs under the Reform Act for two reasons: (1) "the [violation's] impact on Wachovia and the case was de minim-[i]s," and (2) the "baseless allegation . . . d[id] not qualify as [a] 'substantial violation[ ]'" triggering § 78u-4(c)(3)(A)(ii)'s presumption for the sanctions sum. J.A. 1629.

A Rule 11(b) violation in a complaint is only severe enough to activate the full attorney fees and expenses presumption if the violation makes the complaint as a whole a "substantial failure" under Rule 11(b). Therefore, if we determine that the district court did not err in concluding that the stock loan allegation alone did not make the first amended complaint a "substantial failure" under Rule 11(b), we may affirm without reaching the question whether the impact of the violation was de minimis in the context of the litigation as a whole.

We must first consider what standard of appellate review applies to a district court's Reform Act determination that a complaint is a "substantial failure" under Rule 11(b). The Act does not specify the standard. While at first blush de novo review might appear to be appropriate, as it is for ordinary questions of law, we conclude that

Reform Act "substantial failure" determinations should be reviewed for abuse of discretion. This conclusion hews to two Supreme Court precedents. In one case the Court explained that because trial judges are in a better position than appellate judges to decide whether parties or their lawyers have violated Rule 11, trial judge decisions in this area warrant deference. *Cooter & Gell*, 496 U.S. at 403-05. Reform Act "substantial failure" determinations are simply a variation of Rule 11(b) assessments. In the other case the Court adopted abuse of discretion as the standard of review for district court rulings under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), which authorizes an award of reasonable attorney fees against the government "unless the court finds that the position of the United States was substantially justified." *Pierce v. Underwood*, 487 U.S. 552, 561-62 (1988). The EAJA is a fee-shifting statute requiring examination of the merits of the government's litigating position, just as the Reform Act's fee-shifting sanctions scheme requires examining the merits of the complaint. Thus, the congruence between the EAJA, Rule 11, and the Reform Act indicates that the abuse of discretion standard is proper here.

Under this standard we conclude that the district court did not abuse its discretion in holding that the factually-unsupported stock loan allegation did not turn the first amended complaint into a "substantial failure" under Rule 11(b). "[T]he 'substantial failure' language requires an inquiry into whether the complaint's Rule 11(b) violations make the complaint as a whole 'essentially,' 'without material qualification,' 'in the main,' or 'materially' frivolous." *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 228 (2d Cir. 2002) (Walker, C.J., concurring) (citing *Black's Law Dictionary* 1281 (5th ed. 1979)); *see also Pierce*, 487 U.S. at 565 (concluding that the government's position is "substantially justified" under the EAJA if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." (punctuation omitted)).

Here, the stock loan allegation was only one of many claims asserted in the first amended complaint. Wachovia does not contend that rebutting the allegation, which was not very complex factually, imposed any demonstrably onerous burden. The allegation did not, moreover, figure so prominently in the case as to contaminate the first amended complaint "in the main." So the district court did not abuse

its discretion when it declined to classify the first amended complaint as a "substantial failure" under Rule 11(b) solely because of the stock loan claim.

## B.

Wachovia next argues that the district court should have concluded that several of Morris's other allegations were without legal or factual support in violation of Rule 11(b). In particular, Wachovia homes in on four matters: (1) the pay-to-play allegation that Wachovia selected as money managers only those who pledged to generate trading fee income for Wachovia; (2) the allegation that Wachovia impermissibly earned hidden fees; (3) the allegation that Wachovia earned market-making revenue at Morris's expense; and (4) the "fraud on the market" allegation that would have enabled Morris to benefit from a presumption of reliance on a Wachovia misrepresentation.

To prevail Wachovia must first show that the district court abused its discretion in finding that none of these claims violated Rule 11(b). If violations are established, Wachovia must next show that the court abused its discretion in concluding that these violations did not make the complaints as a whole "substantial failure[s]" under Rule 11(b). Finally, the sanctions opponent (such as Morris's counsel) could avoid payment of the adversary's full fees by demonstrating that the Rule 11(b) violations found were "de minimis," but we do not reach this last analytical step because we dispense with Wachovia's claims at the first two steps.

## 1.

Among the allegations in the second amended complaint was the "pay-to-play" claim, namely that Wachovia allowed a money manager to enlist in the Masters Program only if the manager promised to help Wachovia earn stock trade, asset custody, or other fees from the manager's clients. The complaint attributed the information supporting this allegation to a "Richmond-based investment adviser." J.A. 83.

"[A] complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations based on information

which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." *Kunstler*, 914 F.2d at 516 (emphasis added). This rule also empowers the district court to sanction a party or lawyer for "insisting [on] a position after it is no longer tenable." Fed. R. Civ. P. 11(b) Advisory Committee's Notes to 1993 Amendments.

The district court did not abuse its discretion in concluding that Morris's lawyers had a sufficient factual basis for the pay-to-play claim. Morris's lawyers initially grounded the pay-to-play allegation on information provided by Stephen M. Goddard, the anonymous "Richmond-based investment adviser." Goddard's deposition testimony, however, came close to contradicting the allegation. In opposing summary judgment, Morris's lawyers then relied on Matthew B. Mooney, Goddard's former business partner (who was also one of Morris's lawyers earlier in the case). Mooney testified repeatedly in his deposition that he had personal knowledge substantiating the pay-to-play allegation. Yet Mooney's only claim of firsthand knowledge was based on a hazy recollection of a meeting at which Goddard and Wachovia employees may have discussed a variety of business deals in addition to the Masters Program.

The district court concluded that Mooney's "personal knowledge" was only hearsay and therefore insufficient to allow Morris to survive summary judgment on the pay-to-play allegation. The court nevertheless determined that the testimony was sufficient to avoid a Rule 11(b) violation on the pay-to-play allegation. Because Mooney's testimony provided some (albeit vulnerable) support for the allegation, there was no abuse of discretion in the court's determination.

2.

The first amended complaint alleged that Wachovia charged hidden fees each time Morris bought stocks. This claim stemmed from an apparent discrepancy in the account statements. The price per share as listed on the statements, multiplied by the number of shares purchased, did not match the total sum charged each month. The hidden fees claim was brought into doubt when Morris's lawyers examined the confirmation slips associated with each trade. The slips, unlike the monthly statements, reported the prices charged to a full nine decimal places. Morris had waived receipt of the slips when he opened the

account, and Wachovia provided the slips to Morris's counsel only *after* the first amended complaint was filed. The second amended complaint dropped this hidden fees claim.

The district court acted within its discretion in holding that Morris's lawyers were entitled to infer from the monthly account statements that Morris was being charged transaction fees not previously disclosed to him. Although Wachovia asserted that the slips, not the monthly statements, accurately stated the fees charged when the firm provided the slips to Morris's lawyers, that assertion alone did not compel Morris's lawyers to abandon the hidden fees claim. Rather, Morris's lawyers were entitled to a reasonable amount of time to investigate the assertion and the discrepancy between the slips and the account statements. Because Morris's lawyers dropped the claim when their inquiry established that it was no longer tenable, the district court did not abuse its discretion in determining there was no Rule 11(b) violation.

3.

The first amended complaint also alleged that on some unspecified trades Wachovia acted as a principal rather than as an agent for Morris as buyer or seller, thereby profiting directly at Morris's expense. Morris's counsel based this market-making revenue claim on Wachovia's statement in a disclosure document that it engaged in "transactions as agent, or where permitted by law, as principal for clients." J.A. 1095-96. This claim did not appear in the second amended complaint.

The district court did not abuse its discretion in concluding that the disclosure document relied on by Morris's lawyers provided a sufficient factual basis for his market-making revenue claim. Wachovia points to another document that said the firm would act only as agent, not as principal, in transactions relating to the Masters Program. The document relied on by Morris's lawyers covered the broad range of investment services offered by Wachovia. Even assuming that Morris's lawyers made a mistake in drawing an inference from a general disclosure document that was contradicted by a program-specific document, this mistake did not compel the district court to find a Rule

11(b) violation. The rule required some evidentiary support for the market-making revenue claim, but it did not require perfection.

4.

With regard to Morris's allegation that he had relied on Wachovia's fraudulent statements or omissions, the first amended complaint asserted: "The fraud alleged herein consisted of the omission of material facts, accordingly reliance is presumed as a matter of law. Alternatively, should the fraud alleged herein be construed as misstatements the Plaintiff and the Class members rely on the 'fraud on the market' doctrine." J.A. 1348. *See Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 n.1 (4th Cir. 1999) ("[W]here material false statements or omissions have been disseminated to an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed.") (punctuation omitted). The second amended complaint, by contrast, did not invoke the fraud on the market theory; rather, it emphasized that Morris was entitled to rely on Wachovia's representations because Wachovia owed Morris a fiduciary duty. The district court concluded that the first amended complaint's reference to the fraud on the market theory did not contravene Rule 11(b)'s requirement that legal contentions be reasonably justified. Wachovia argues that this conclusion was an abuse of discretion.

We agree that this case was ill-suited for the fraud on the market theory. The case concerns alleged improprieties in an investment advice and management program Wachovia operated. Wachovia's alleged misstatements about fees charged were not falsehoods that could have been reflected in the market price of any securities. The fee charged for a securities trade is distinct from the price of the security being traded. The Masters Program connected Morris to money managers in exchange for fees Wachovia charged, but the program was not a security traded on any market (let alone, in *Longman*'s terms, an "impersonal" and "well-developed" market). The fraud on the market theory was simply inapplicable to Morris's claim. Thus, when Morris's lawyers invoked the theory in the first complaint, they violated Rule 11(b)'s prohibition on legal arguments that have "absolutely no chance of success under existing precedent." *Hunter*, 281 F.3d at 153.

The next step is to determine whether this violation made the first amended complaint a "substantial failure" under Rule 11(b). We note that the violation concerned an essential element of the securities fraud claim, which was the only kind of claim the first amended complaint asserted. A private plaintiff's Rule 10b-5 securities fraud complaint must allege among other things that the plaintiff relied on the misrepresentations at issue. *See The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 593 (2001) ("the plaintiff [must] sustain damages through reliance on the misrepresentation") (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988)).

Nevertheless, Wachovia's arguments ultimately pay insufficient attention to the entirety of the first amended complaint. The reliance assertion must be read in context. Morris's lawyers did not rest this assertion on the fraud on the market theory alone. Instead, they expressly invoked the theory as an alternative to the primary assertion that the investor's reliance on Wachovia's omissions could be presumed. The two-sentence paragraph labeled "Reliance" (quoted above) did not specify the basis for such a presumption, but a few paragraphs in the preceding pages did. These paragraphs stressed that Wachovia owed fiduciary duties to Morris. The express references to the fiduciary relationship allow the "Reliance" paragraph to be fairly understood as arguing that reliance may be presumed in a fiduciary relationship. This argument is supported by Supreme Court language, thereby forestalling a successful Rule 11(b) attack. Under the federal securities laws a duty to disclose material information may arise "from the relationship between parties." *Chiarella v. United States*, 445 U.S. 222, 231 n.14 (1980). The alleged fiduciary relationship between Morris and Wachovia was one imposing on Wachovia a duty to disclose material information, *id.* at 228, and when such a duty has "been breached" courts "dispense[ ] with a requirement of positive proof of reliance." *Basic*, 485 U.S. at 243.

The first amended complaint's reliance allegation did not hinge, then, on the fraud on the market theory, but could be reasonably understood to hinge on the fiduciary relationship between Wachovia and Morris. As a result, the frivolous invocation of the theory did not transmute the first complaint as a whole into a "substantial failure" under Rule 11(b). We therefore cannot conclude that the district court committed reversible error in assessing Wachovia's claim.

## C.

In sum, the district court did not err in rejecting Wachovia's four arguments that Morris's complaints were "substantial failures" under Rule 11(b). In addition, because the sole instance of Rule 11(b) misconduct that the district court identified in the complaints did not convert them into "substantial failures" of compliance in violation of the rule, *supra* part III.A., the district court was not bound to presume that Wachovia should receive an award of its full fees and costs in the action under 15 U.S.C. § 78u-4(c)(3)(A)(ii).

## IV.

Wachovia next challenges the district court's evaluation of Morris's brief opposing summary judgment. Because a motion for summary judgment is a "dispositive motion," a brief opposing such a motion falls within the ambit of the Reform Act's sanction inquiry. *See* 15 U.S.C. § 78u-4(c)(3)(A)(i) (presuming sanctions for "any responsive pleading or dispositive motion" contravening Rule 11(b)). Although the district court found that Morris's lawyers drew impermissible inferences from the testimony of Baldiswieler and White in their brief (*see supra* part I.B.), the district court declined to order any monetary sanctions for these Rule 11(b) violations because it concluded that Wachovia failed to prove the amount of its fees and costs "incurred as a direct result of the violation[s]." 15 U.S.C. § 78u-4(c)(3)(A)(i).

Wachovia contends that the district court erred in allocating the burden of proving the fee amount to the firm and in not providing it another chance to explain what portion of its fees were fairly traced to the Baldiswieler and White violations. In arguing that the district court was obligated to award a fee notwithstanding any deficiencies in its fee affidavit, Wachovia relies on isolated language from another circuit's precedent. *See Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1196 (11th Cir. 2002) ("[A] district court faced with an inadequate fee application must still award a reasonable fee.") (citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).

The Reform Act does not instruct the district court how to determine a "reasonable attorneys' fee." Fee-shifting statutes such as the

Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, similarly speak in terms of "reasonable" attorney fees. This linguistic similarity is "a strong indication" that the routine procedures for determining a § 1988 fee may be used as a guide for determining a Reform Act fee. *Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2 (1989). To be sure, Congress's differing "large objectives" (including "equitable considerations") behind different fee-shifting statutes mean that a fee award reasonable under one statute may not be reasonable under another. *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 710 (2005) (punctuation omitted). This caveat does not counsel hesitation here, however, for nothing in the different policy aims of the Reform Act and § 1988 suggests that a fee affidavit submitted under the Reform Act should be excused from satisfying the same basic standards as an affidavit under § 1988. Indeed, Wachovia implicitly concedes that the securities fraud and civil rights attorney fee statutes are parallel to this extent. In the very case on which Wachovia relies, *Oxford Asset Management*, the Eleventh Circuit supported its discussion of fees under the Reform Act with direct citation to *Norman*, a civil rights fee case.

We thus evaluate the adequacy of the fee evidence Wachovia presented using our § 1988 precedent. In *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92 (4th Cir. 1993), we "outline[d] the appropriate tack a fee applicant should follow" under § 1988:

> First, the applicant must make every effort to submit time records which specifically allocate the time spent on each claim. Second, those records should attempt to specifically describe the work which the fee applicant allocated to unsuccessful claims so as to assist the district court in determining the reasonableness of the fee request. In establishing these guidelines, we recognize that some claims may have such a common core of facts and legal theories so as to prevent any allocation of the fees to the applicant's separate claims. However, we hereby admonish all parties that a blind adherence to this argument runs the risk of incurring a complete denial of fees.

*Id.* at 97. Applicants for fee awards under the Reform Act, no less than those seeking awards under 42 U.S.C. § 1988, must follow this guidance.

We take the district court's conclusion that Wachovia failed to prove the fee amount attributable to the Rule 11(b) violations to mean that the district court found Wachovia's fee affidavit deficient on its face. The fee affidavit in the record makes clear that Wachovia's counsel did nothing to "allocate the time spent on each claim" or to "describe the work" it performed in a way that could have assisted the court in "determining the reasonableness of the fee request." Confronting these weaknesses in the fee affidavit, the district acted within its discretion in denying the fee award. *Landow*, 999 F.2d at 97-98.

Wachovia is correct that the Reform Act imposes on the district court the duty of making specific findings regarding Rule 11(b) compliance. Wachovia did not have to move for such findings. It does not follow, however, that Wachovia had no duty to present proper documentation for its fee request. The opposite is true. The "burden . . . of course rested with" Wachovia as fee claimant, and it simply failed to meet that burden. *Id.* at 98 (quoting *Buffington v. Baltimore County*, 913 F.2d 113, 128 (4th Cir. 1990)). Put another way, the Reform Act's requirement that the district court adopt a presumption that the fee amount attributable to a Rule 11(b) violation is the correct sanction does *not* excuse the sanctions proponent's failure to establish that amount. "A party seeking attorneys' fees must present a request from which the correct amount may be computed with reasonable dispatch. The failure to do this justifies a rejection of the request." *In re Cent. Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir. 1987).

Also meritless is Wachovia's argument that it should have been allowed to submit a more detailed fee affidavit once it learned at the sanctions hearing that the district court needed evidence of which fees were fairly traceable to the Rule 11(b) violations. Requiring another round of fee submissions here would effectively encourage rather than curtail satellite litigation over fees. *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995).

For these reasons there was no error in the district court's denial of attorney fees and costs attributable to the Rule 11(b) violations in the brief opposing summary judgment.

## V.

We turn to the consequences of the Reform Act's command that for identified Rule 11(b) violations the district court "shall impose sanctions . . . in accordance with Rule 11." 15 U.S.C. § 78u-4(c)(2). This statutory command continues to apply even though we hold that the district court did not abuse its discretion in denying Wachovia monetary sanctions in the form of partial or complete attorney fees and costs.

Other than establishing the baseline rule that the sanction must be "in accordance with Rule 11," the Act does not specify an appropriate sanction where, as here, the sanctions proponent fails to make the threshold showings that would entitle the proponent to the presumed award amounts specified in § 78u-4(c)(3)(A). The Act does, however, expressly provide a rule for a closely related situation. As discussed above, *supra* part II, when the sanctions opponent successfully rebuts the presumption regarding the award amount specified by the Act, § 78u-4(c)(3)(B), the district court must go on to "award the sanctions that the court deems appropriate" under Rule 11. § 78u-4(c)(3)(C). There is no apparent reason for applying one rule to a sanctions proponent whose adversary has successfully rebutted the presumption and another rule to a sanctions proponent who has not made the threshold showings. Therefore, when the district court has found Rule 11(b) violations but the sanctions proponent fails to qualify for the Act's presumed sanctions award, the court should select the sanction it deems appropriate under Rule 11.

The question then becomes whether the district court, within its discretion, appropriately sanctioned Morris's lawyers under Rule 11. The rule limits the sanction — which "may consist of, or include, directives of a nonmonetary nature" — to "what is sufficient to deter repetition" of the offending conduct. Fed. R. Civ. P. 11(c)(2). As a nonmonetary sanction, a "court may, for example, strike a document, *admonish a lawyer*, require the lawyer to undergo education, or refer an allegation to appropriate disciplinary authorities." *Hunter*, 281 F.3d at 151 (emphasis added).

Wachovia's counsel contended at oral argument that the difference between the Reform Act's description of "specific findings regarding

[Rule 11(b)] compliance" on one hand, § 78u-4(c)(1), and "sanctions that the court deems appropriate" on the other hand, § 78u-4(c)(3)(C), means that a district court's naked finding of a Rule 11(b) violation is not by itself a sufficient Reform Act sanction. Yet neither party disputes that were we to remand this case and instruct the district court to issue a one-sentence admonition of Morris's lawyers for violating Rule 11(b), that admonition would be a permissible sanction.

Such a narrow remand is the prudent course here. The implication of the district court's order finding Rule 11(b) violations yet denying monetary sanctions is this: had the court understood that the Reform Act required it to impose a sanction, it would have imposed the non-monetary sanction that flows most naturally from its finding — namely, admonition. An admonition will only be meaningful, however, if it is directed at the lawyers whose conduct gave rise to the Rule 11(b) violations found. The district court is familiar with the proceedings and filings in this case and is therefore better suited than we are to identify those lawyers. On remand the district court should issue a written order admonishing by name the individual lawyers responsible for the Rule 11(b) violations that the district court identified in Morris's complaints and in the brief opposing summary judgment. We conclude that such an order is necessary to satisfy the Reform Act's sanction requirement in this case. (The order may be short because the district court's memorandum opinion dealing with the sanctions issue fully explains the three violations.)

## VI.

On cross-appeal Morris challenges the district court's findings of the three Rule 11(b) violations and argues further that the court should have concluded that Wachovia's counterclaim violated Rule 11(b)'s ban on frivolous legal arguments. After carefully examining the district court's conclusions that Morris's lawyers violated Rule 11(b) in pressing the stock loan claim and in mischaracterizing White's testimony, we need only say that we find no abuse of discretion. The court's determination about the mischaracterization of Baldiswieler's testimony in the brief opposing summary judgment warrants some discussion.

Again, Morris's opposition brief argued that "[t]he logical and reasonable inference to be drawn" from Baldiswieler's deposition and

other facts was that Wachovia selected money managers based on their potential for generating profits for Wachovia. J.A. 646. This assertion rested on a portion of Baldiswieler's testimony mentioning the *possibility* that language in a communication between Wachovia and Baldiswieler's money management firm referred to a soft dollar deal. The opposition brief failed to acknowledge, however, that Baldiswieler went on to specifically testify that he did not believe Wachovia was a party to any actual soft dollar deals. The brief thus did not accurately represent Baldiswieler's testimony, and the district court's concern about the inaccuracy was legitimate.

We leave undisturbed the district court's findings of the Rule 11(b) violations because they do not constitute an abuse of discretion. Likewise, Morris fails to show that the district court abused its discretion in determining that while Wachovia's counterclaim was "on the edge of propriety," J.A. 1631, the counterclaim was not so unsupported or driven by an improper purpose as to constitute a Rule 11(b) violation.

## VII.

The district court's order entered January 28, 2005, is vacated to the extent it does not impose any sanctions. The order is otherwise affirmed. The case is remanded for the district court to enter an order naming and admonishing the lawyers responsible for the identified Rule 11(b) violations.

*AFFIRMED IN PART*,
*VACATED IN PART*,
*AND REMANDED WITH INSTRUCTIONS*