PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 21-2596 and 21-2647
_____


TARA SCOTT; WILSON CARTER, individually and as
Trustee of the Bailey
Middleton Carter 2009 Trust, the Mary Wilson Carter 2009
Trust,
and the Wilson M. Carter 1988 Trust
Appellants in No. 21-2596

v.

VANTAGE CORPORATION; VANTAGE ADVISORY
MANAGEMENT, LLC;
VF(X), LP; TRADELOGIX, LLC; BRIAN ASKEW;
*GERALD FINEGOLD

BRIAN ASKEW,
Appellant in No. 21-2647

*(Dismissed pursuant to Court's order dated 11/8/2021)

_____

On Appeal from the United States District Court
for the District of Delaware
District Court No. 1-17-cv-00448
Magistrate Judge: The Honorable Mary Pat Thynge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 15, 2022

Before: RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Filed: April 5, 2023)

Thomas A. Uebler
McCollom D'Emilio Smith Uebler
2751 Centerville Road
Suite 401
Wilmington, DE 19808

Craig H. Kuglar
Suite A102-353
931 Monroe Drive NE
Atlanta, GA 30308
  *Counsel for Appellant/Cross-Appellee Brian Askew*

S. Lawrence Polk

2

Eversheds Sutherland
999 Peachtree Street, N.E.
Suite 2300
Atlanta, GA 30309
  *Counsel for Appellees/Cross-Appellants*
      *Tara Scott and Wilson Carter*

—————————————————

OPINION OF THE COURT
—————————————————


SMITH, *Circuit Judge*.

We address here both an appeal and a cross-appeal, each requiring us to examine the interplay between the Private Securities Litigation Reform Act of 1995 ("PSLRA")[1] and Federal Rule of Civil Procedure 11 ("Rule 11"). Plaintiffs Tara Scott and Wilson Carter ("Plaintiffs") originally brought a lawsuit asserting federal securities claims against Defendants Brian Askew, Gerald Finegold, and Vantage Corporation ("Vantage").[2] The District Court eventually granted summary

---

[1] 109 Stat. 737, codified as amended in scattered sections of U.S.C. Title 15.

[2] Plaintiffs brought federal securities claims against Askew, Finegold, and Vantage. The District Court determined that Plaintiffs violated Rule 11 in their claims against Finegold and awarded attorneys' fees, which neither Finegold nor Plaintiffs

judgment for Askew and this Court affirmed. After that affirmance, the District Court performed a PSLRA-mandated Rule 11 inquiry. The District Court determined that Plaintiffs violated Rule 11 but chose not to award Askew attorneys' fees or to impose any other sanctions. In this appeal, Plaintiffs contend that the District Court erred in concluding that they violated Rule 11. For his part, Askew contends that the District Court, after determining that Plaintiffs violated Rule 11, erred in failing to impose sanctions, and that those sanctions should have included attorneys' fees. For the reasons stated below, we will affirm the District Court's order insofar as it determined: (1) that Plaintiffs violated Rule 11 in bringing their federal securities claims against Askew and (2) that Askew was not entitled to attorneys' fees. The PSLRA, however, mandates the imposition of some form of sanctions when parties violate Rule 11 in bringing federal securities claims. And because the District Court determined that Plaintiffs violated Rule 11 by asserting their claims against Askew, we will vacate the portion of the order declining to impose sanctions and will remand this matter to the District Court with directions to issue some form of Rule 11 sanctions against Plaintiffs.

## I.    BACKGROUND

We begin, as we must, with an overview of the PSLRA and Rule 11 provisions relevant to this appeal. We will then

---

have contested. Vantage entered bankruptcy proceedings before the District Court conducted its Rule 11 analysis. Vantage and Finegold are not parties to this appeal.

outline the factual and procedural background of the underlying dispute before turning to the merits.

## A. Rule 11 and the PSLRA

The Supreme Court adopted the Federal Rules of Civil Procedure, including Rule 11, in 1937. Rule 11 has been amended at various times, but "[s]ince its original promulgation, Rule 11 has provided for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the signing of pleadings." Fed. R. Civ. P. 11, advisory committee's note to 1983 amendment. The 1983 Amendment to Rule 11 attempted to address ongoing issues with litigation "abuses" "by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation." *Id.*

Rule 11 imposes requirements on attorneys and parties regarding pleadings and other court filings. First, a filing must "not be[] presented for any improper purpose, such as to harass" another party. Fed. R. Civ. P. 11(b)(1). Second, the claims must be "warranted by existing law or by a nonfrivolous argument for extending" or modifying existing law. Fed. R. Civ. P. 11(b)(2). Third, "the factual contentions [must] have evidentiary support or . . . [be] likely [to] have evidentiary support after" discovery. Fed. R. Civ. P. 11(b)(3). Finally, before filing, the parties and their attorneys must undertake an "inquiry reasonable under the circumstances" to verify compliance with Rule 11's requirements. Fed. R. Civ. P. 11(b). If a party violates Rule 11, a court "*may* impose an appropriate sanction on any attorney, law firm, or party that violated [Rule

11] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added).

Congress passed the PSLRA in 1995, pursuing the "twin goals" of "curb[ing] frivolous, lawyer-driven litigation, while preserving [] investors' ability to recover on meritorious claims.'" *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007)). The statute was intended to accomplish these goals, in part, by "heighten[ing] the pleading requirements" for federal securities claims. *Id.* at 335.

The PSLRA also modified how courts should apply Rule 11. First, it provides that for any private action bringing federal securities claims, "the court shall include in the record specific findings regarding compliance by each party and each attorney" with Rule 11(b)'s requirements. 15 U.S.C. § 78u-4(c)(1). The text of Rule 11 lacks such a requirement. Second, if the court determines that any Rule 11 violations occurred in a federal securities action**,** the PSLRA instructs that the "court *shall* impose [Rule 11] sanctions." *Id.* § 78u-4-(c)(2) (emphasis added). By contrast, in a non-PSLRA Rule 11 inquiry, a court "may" impose sanctions when parties violate the Rule. Finally, if the violation constitutes a "substantial failure of a[] complaint to comply" with Rule 11, the PSLRA creates "a presumption that the appropriate sanction . . . is an award to the opposing party of [] reasonable attorneys' fees." *Id.* § 78u-4(c)(3)(A)(ii). This presumption regarding the appropriate sanction is absent from the application of Rule 11 in other contexts. Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of

the conduct or comparable conduct by others similarly situated.").

## B. Factual Background

Askew formed Vantage Corporation ("Vantage") in 2014 to trade securities using his proprietary trading software. He marketed Vantage stock and recruited investors, including Plaintiffs. Gerald Finegold was Vantage's President and Director. Non-party Matthew Dwyer helped Askew to identify potential investors. In April 2015, Vantage filed a Securities and Exchange Commission ("SEC") Form D to sell unregistered securities in a 2016 stock offering under SEC Rule 506(b).[3] Plaintiffs purchased stock in that offering.

---

[3]Securities offerings under SEC Rule 506(b) are exempt from registration. But to proceed with an unregistered securities offering, an issuer must still meet certain requirements. First, an issuer cannot engage in general solicitation or advertising to market the securities. Second, securities may not be sold to more than 35 non-accredited investors. In general, SEC Rule 501 defines "accredited investor" as an individual with a high net worth or salary, or an individual with extensive investment experience. *See* 17 C.F.R. § 230.501. Third, if non-accredited investors participate in the offering, the issuer must provide the non-accredited investors with certain disclosure documents about the potential investment. Finally, all non-accredited investors must have sufficient knowledge and experience to evaluate potential risks. *See Accredited Investor*, U.S. Sec. & Exch. Comm'n (last updated Nov. 1, 2022),

Tara Scott, a widow, purchased $2,000,000 of Vantage stock between January 28, 2016, and March 2, 2016. The funds that she invested were life insurance benefits she received after her husband died. According to Scott, she purchased the stock based on Askew's oral representations that the investment was "no-risk," that "70% of [her] investment would be placed in a segregated account," that she would "receive back [her] initial investment within six months," and that Vantage owned the proprietary trading software that was the basis of Vantage's business model. JA 1431. Scott contends that none of those representations were true. Also in 2016, Carter invested $3,000,000 in Vantage. A portion of that investment was the purchase of Vantage securities for Carter's minor daughter. In total, Vantage raised about $8 million from sixteen investors during its 2016 stock offering.

Plaintiffs began to worry about Vantage's financial condition shortly after they invested their funds. Specifically, Plaintiffs were concerned because Askew was not providing sufficient information to them concerning the status of their investments. They decided they would seek to recoup their initial investments in Vantage and part ways with the company. But Plaintiffs' investments were illiquid, and they had no right, based on their stock agreements, to rescind those investments.

Lacking a contractual right to rescind, Plaintiffs decided to threaten litigation and to report Vantage to the SEC as a way of pressuring Askew and Vantage to return Plaintiffs' initial

---

https://www.sec.gov/education/capitalraising/building-blocks/accredited-investor.

investments. In a November 2017 email to Scott and Plaintiffs' counsel, after suit was filed, Carter noted that Plaintiffs' "strategy was to file [] complaints to force a settlement." JA 147.[4] Before filing suit, Plaintiffs engaged an independent accountant who reviewed some of Vantage's financial documents. In a March 8, 2017 letter, the accountant concluded that he could not say "whether anything nefarious is going [] on" with Vantage, but that the "'smell factor' is definitely present." SA 173.

## C. Procedural Background

On April 20, 2017, Plaintiffs sued Vantage, Askew, and Finegold ("Defendants") in the U.S. District Court for the

---

[4] This is the full text of Carter's November 2017 email, which he sent to Scott and their attorneys at Eversheds Sutherland:

> All—I am told the SEC has completed their investigation and notified Vantage they are dropping their inquiries and the case.
>
> I need some sort of signal or opinion that the course of action has merit. I find the situation of paying massive legal fees vs. defendants with no assets to be untenable.
> The strategy was to file these complaints to force a settlement…I don't foresee this outcome. [P]lease help me understand what our current strategy is? JA 2238.

District of Delaware.[5] Plaintiffs asserted ten counts in their Complaint, including three federal securities claims.

First, under 15 U.S.C. § 771, Plaintiffs alleged a federal securities law violation for the sale of unregistered and non-exempt securities (the "Unregistered Securities Claim"). In this claim, Plaintiffs alleged that Defendants did not meet registration exemption requirements, and that Vantage's unregistered 2016 offering was therefore in violation of federal securities law. The crux of this claim was that Askew sold Vantage securities to allegedly unsophisticated and unaccredited investors without providing sufficient disclosures.

Second, Plaintiffs alleged that Defendants violated 15 U.S.C. § 771(a)(2) by making misrepresentations in connection with the issuance of a security (the "Misrepresentation Claim"). In this claim, Plaintiffs alleged that Askew made a host of misrepresentations while selling Vantage stock, such as misrepresenting Vantage's resources.

Third, Plaintiffs alleged Rule 10b-5 Securities Fraud (under 15 U.S.C. § 10b-5) (the "10b-5 Securities Fraud Claim"). In support of this claim, Plaintiffs alleged that Askew defrauded Plaintiffs with materially misleading statements

---

[5] On June 22, 2017, the parties consented to full adjudication by a magistrate judge. The case was referred to Magistrate Judge Mary Pat Thynge that same day.

10

about Vantage and that Plaintiffs relied on Askew's fraudulent statements in purchasing Vantage stock.[6]

### 1. The District Court's adjudication of Plaintiffs' federal securities claims

On June 17, 2019, the District Court granted summary judgment for Askew and Finegold on Plaintiffs' federal securities law claims. Before that ruling, Vantage had entered bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Georgia. Plaintiffs' claims against Vantage were therefore subject to an automatic stay.

As to the Unregistered Securities Claim, the District Court determined that the record did not support the theory Plaintiffs advanced. Plaintiffs had alleged that Askew and Vantage sold securities to unaccredited investors, namely Carter's minor child and Dwyer (who was bankrupt at the time of his purchase). Because minors and bankrupt individuals are unlikely to qualify as accredited investors due to the income and investment-experience requirements, *see supra* note 3, Plaintiffs argued that Vantage was *not* exempt from registration. The Court determined that Dwyer, due to his bankruptcy, was likely unaccredited at the time of his purchase, and that Carter's child was indeed a minor when Carter

---

[6] To succeed with a 10b-5 securities fraud claim, a plaintiff must show "loss causation" in addition to reliance. To do so, a plaintiff must demonstrate that an alleged material misrepresentation caused the economic loss that plaintiff suffered. *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424–26 (3d Cir. 2007).

11

purchased securities on her behalf. The Court concluded, however, that Askew reasonably believed that both investors were accredited at the time of their security purchases.[7] Plaintiffs also alleged that Vantage engaged in a broad solicitation campaign that was akin to a public offering. That, they claim, would also have rendered Vantage subject to registration. However, the Court determined that the record did not establish that a public offering had occurred.

On Plaintiffs' Misrepresentation Claim, the Court concluded that such claims do not apply to the private sale of securities. And because the Court determined that the record contained no evidence of a public offering, the Court granted summary judgment for Askew and Finegold.

Finally, on Plaintiffs' 10b-5 Securities Fraud Claim, the Court concluded that Plaintiffs failed to establish loss causation. In particular, the Court declared that "there was no support in the record for [P]laintiffs' contention that defendants made 'serial misrepresentations' that caused them to purchase Vantage Corporation stock *and* [that caused] the value of the stock to plummet." JA 14–15 (emphasis added).

Plaintiffs appealed the District Court's summary judgment order. On February 5, 2021, this Court affirmed the District Court's grant of summary judgment. *See Scott v. Vantage Corp.*, 845 F. App'x 170 (3d Cir. 2021).

---

[7] *See* 17 C.F.R. § 230.501(a) (defining "accredited investor" to include persons "who the issuer reasonably believes" are accredited).

12

## 2. The District Court's Rule 11 analysis

Askew had filed a Rule 11 Motion on December 6, 2019, but the District Court held it in abeyance until this Court's February 5, 2021 ruling affirming summary judgment.[8] After our Court affirmed, the District Court performed the Rule 11 inquiry that the PSLRA mandates.

As to Finegold, the District Court concluded that Plaintiffs violated Rule 11 and awarded Finegold his attorneys' fees.[9] As we've noted in the margin, neither Plaintiffs nor Finegold appealed that aspect of the Court's Rule 11 decision.

As to Askew, and central to our inquiry here, the District Court concluded that Plaintiffs violated Rule 11 but declined to impose sanctions. That Court first determined that Plaintiffs performed a reasonable inquiry before filing their Complaint, in part because Plaintiffs engaged an accountant who

---

[8] In our opinion affirming summary judgment, we noted that Askew "also appealed the District Court's failure to decide" Askew's Rule 11 motion. *Scott*, 845 F. App'x at 181 n.10. However, because "the District Court notified the parties it [would] rule on that motion," we determined that portion of Askew's appeal to be moot. *Id.*

[9] The District Court concluded that Plaintiffs' claims against Finegold were tenuous, and that his only connection to Plaintiffs' claims was his "mere status" as a control person. Moreover, Plaintiffs' Complaint "failed to include any allegations of [Finegold's] action or inaction," and Plaintiffs "admitted they never spoke with Finegold before investing in Vantage." JA 33–34.

13

concluded that the "smell factor" was present. JA 19–23; SA 173. However, the Court held that Plaintiffs violated Rule 11(b)(1) by filing for an improper purpose—forcing a settlement. In making that finding, the District Court relied heavily on the email in which Carter articulates a "strategy" designed "to force a settlement." JA 23–24; *see supra* note 4.

The District Court also held that Plaintiffs violated Rule 11 by bringing their Unregistered Securities and Misrepresentation Claims. For these claims, the Court concluded that Plaintiffs violated Rule 11's requirement that factual contentions have, or likely will have, evidentiary support. Fed. R. Civ. P. 11(b)(3). The Court reasoned that Plaintiffs' pre-filing investigation "should have revealed the lack of factual support for the allegation that the relevant Vantage Corporation offering was public." JA 27. And on the allegation of sales to unaccredited investors, the Court noted that the Complaint failed to "identify[] any specific individuals," and that "[o]nly with the benefit of hindsight and discovery did plaintiffs identify Dwyer and Carter's minor daughter as potentially unaccredited investors." JA 27.

The District Court did not, however, find a violation of Rule 11 in Plaintiffs having brought the 10b-5 Securities Fraud Claim. In support of that claim, Plaintiffs alleged that Askew made a host of misrepresentations in connection with the sale of Vantage securities. Askew's motion for summary judgment did not rebut these misrepresentations—he only argued that Plaintiffs failed to establish reliance and loss causation. Plaintiffs therefore asserted that Askew "concede[d] . . . Plaintiffs had a reasonable basis to allege" that he made

14

representations to them that "were false." JA 28. The District Court agreed. It determined that Plaintiffs' "communications with an accountant," as well as Plaintiffs' review of "financial documents showing [Vantage's] ominous financial position," "produced a reasonable basis to believe they had factual support for the securities fraud claims." JA 29.

And because the District Court considered the 10b-5 Securities Fraud Claim to be the "heart of the complaint," it concluded that Plaintiffs' Rule 11 violations against Askew were not "a substantial violation under the PSLRA." JA 31. Accordingly, that Court declined to award Askew attorneys' fees or to impose any other sanctions on Plaintiffs.

Both parties appealed. Askew appealed the District Court's failure to impose sanctions, including attorneys' fees. Plaintiffs appealed the Court's determinations that Plaintiffs violated Rule 11.

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's Rule 11 determinations for abuse of discretion. *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988). Deference to a district court can be especially important in the Rule 11 context because the district court is "[f]amiliar with the issues and litigants" and "is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal

15

standard mandated by Rule 11." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990). An open question for this Court, however, is whether the interplay between the PSLRA and Rule 11 affects in any way our abuse of discretion review. While the PSLRA mandates and modifies the Rule 11 inquiry, the considerations supporting abuse of discretion review remain unchanged—the inquiry is still heavily fact-dependent and requires familiarity with the issues and litigants. Thus, a district court will always be "better situated than the court of appeals" to apply the rule. *Id.* We therefore join the Fourth Circuit in holding that review of a district court's PSLRA-mandated Rule 11 inquiry is, as with other Rule 11 determinations, subject to the deferential abuse of discretion standard. *Morris v. Wachovia Sec., Inc.,* 448 F.3d 268, 277 (4th Cir. 2006) ("Nothing in the [PSLRA's] sanctions provision changes [abuse of discretion] review."). Of course, "this standard [does] not preclude [an] appellate court's correction of a district court's legal errors," *Cooter & Gell*, 496 U.S. at 402, including a failure to adhere to any of the PSLRA's Rule 11 requirements.

## III.    DISCUSSION

We proceed now in multiple steps. First, we will affirm the District Court's order insofar as it finds Rule 11 violations, including its determination that Plaintiffs' Unregistered Securities and Misrepresentation Claims violated Rule 11 while their 10b-5 Securities Fraud Claim did not. Second, we will affirm the District Court's order insofar as it determined that Plaintiffs' Complaint did not constitute a "substantial failure" to comply with Rule 11. Finally, because the PSLRA

16

requires that some form of sanctions be imposed when a party violates Rule 11, we will vacate the portion of the District Court's order that declined to impose sanctions.

## A. The District Court Did Not Abuse Its Discretion in Finding that Plaintiffs Violated Rule 11

A district court abuses its discretion when it renders a decision that is "contrary to reason or without a reasonable basis in law and fact." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). In applying the abuse of discretion standard, we do not ask whether "we would make the same precise determinations" that we are reviewing. *Id.* Instead, our inquiry is whether the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405. Applying that deferential standard, we hold that the District Court did not abuse its discretion in finding a Rule 11 violation.

### 1. Filing for an improper purpose—Rule 11(b)(1)

First, the District Court did not abuse its discretion in finding that Plaintiffs filed for an improper purpose. Plaintiffs are correct that settlements pervade civil litigation and that filing a complaint with a hopeful eye towards eventual settlement is not, by itself, a Rule 11 violation. Indeed, we have recognized a "strong presumption in favor of voluntary settlement[s]" because they "promote the amicable resolution of disputes," further "the conservation of judicial resources," and help parties "avoid[] the costs and risks of a lengthy and complex trial." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010). Considering the strong policy favoring

17

settlements, and given that "Rule 11 targets abuse," *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (internal quotation marks omitted), we caution district courts to be wary of finding a Rule 11 violation when a plaintiff files a lawsuit alleging colorable claims yet has the ultimate goal of settling those claims.

Here, however, Plaintiffs did not simply have an eye toward settlement. They expressly stated that their "strategy was to file these complaints to force a settlement." JA 15. The District Court also noted (1) "Carter's testimony admitting he sought the return of [his Vantage investment] to make a separate real estate transaction," and (2) testimony from Scott "indicating she did not even know whether her [Vantage] investment had declined in value at the time she filed suit." JA 23 n.108. Finally, in evaluating Plaintiffs' federal securities claims, the District Court determined that two out of the three claims lacked factual support in violation of Rule 11(b)(3).

In light of the intent expressed in Carter's email and the other record evidence the District Court considered, and especially considering the District Court's findings on the factual deficiency of Plaintiffs' federal securities claims, we cannot conclude that the District Court applied a "clearly erroneous assessment of the evidence" in determining that Plaintiffs filed for an improper purpose. *Cooter & Gell*, 496 U.S. at 405. While it is a close call, we are ultimately mindful that ascertaining a party's purpose goes to the heart of a district court's superior position to "marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." *Id.* at 402. Accordingly, because the District Court did not base

18

its finding solely on Plaintiffs' express desire to settle the case, we conclude that the District Court did not abuse its discretion in finding that Plaintiffs violated Rule 11(b)(1).

## 2. Alleging claims without factual support—Rule 11(b)(3)

### a. The Unregistered Securities and Misrepresentation Claims

Second, the District Court did not abuse its discretion in determining that Plaintiffs' Unregistered Securities and Misrepresentation Claims lacked factual support in violation of Rule 11(b)(3). In assessing compliance with Rule 11, courts "must apply an objective standard of reasonableness," assessing a party's or attorneys' conduct based on "what was reasonable to believe at the time [the complaint] was submitted." *Lingle*, 847 F.2d at 94. In other words, courts should avoid "the wisdom of hindsight" when conducting Rule 11 inquiries. *Id.* Here, the District Court did not abuse its discretion in either stating the law or weighing the relevant facts.

In setting forth the Unregistered Securities Claim, Plaintiffs alleged that Askew "made general solicitations to obtain investor funding, including, upon information and belief, soliciting and/or selling to unaccredited investors." JA 215. But as the District Court observed, Plaintiffs made general allegations about unaccredited investors "without identifying any specific individuals." JA 27. Plaintiffs now identify Dwyer and Carter's minor daughter as potentially unaccredited investors, but "Dwyer's name is completely absent" from the

19

Complaint, and Carter had his minor daughter "sign a document indicating she was accredited." JA 27. Accordingly, the District Court found that it was "[o]nly with the benefit of hindsight" that Plaintiffs identified Dwyer and Carter's minor daughter as potentially unaccredited investors. JA 27.

In performing its Rule 11 inquiry, the District Court applied the proper, forward-looking legal framework. And we see no basis to conclude that its assessment of the relevant facts was clearly erroneous. We therefore conclude that the District Court did not abuse its discretion in finding that Plaintiffs violated Rule 11(b)(3) in bringing the Unregistered Securities Claim.

We reach the same conclusion as to Plaintiffs' Misrepresentation Claim. First, the District Court correctly concluded that such claims do not apply to the private sale of securities. *Gustafson v. Alloyd Co*., 513 U.S. 561, 578 (1995) ("The intent of Congress and the design of the statute require that § 12(2) [15 U.S.C. § 771(a)(2)] liability be limited to public offerings."). The Court then marshalled the relevant facts, finding that "the documentation [Askew provided] [P]laintiffs as prospective investors clearly identified the offering was private and for accredited investors only." JA 27. The Court also determined that Plaintiffs' pre-filing investigation "should have revealed the lack of factual support for the allegation that the relevant Vantage [] offering was public." JA 27. Thus, similar to the Unregistered Securities Claim, the District Court's discussion of both the legal framework and relevant facts indicates neither an "erroneous view of the law," nor a "clearly erroneous assessment of the"

20

facts. *Cooter & Gell*, 496 U.S. at 405. We will, therefore, affirm the District Court's conclusion that Plaintiffs' Misrepresentation Claim violated Rule 11(b)(3).

We are mindful of Plaintiffs' reference in their appellate briefing to "observed conduct of" Askew that supported a "reasonable basis to believe" that he engaged in a public offering. Appellee's Br. 25. Plaintiffs point to Scott's March 12, 2019 declaration, stating that in July 2016 while in Aspen, Colorado, Scott observed "Mr. Askew approach two strangers in a bar and solicit them to invest in Vantage Corporation." JA 1435. But the term "public offering" does not have a formulaic definition. Instead, the existence of a public offering turns on whether a "security holder can demonstrate that the sales were made to individuals or entities that did not require the registration protections of the Securities Act." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 215 (3d Cir. 2006); *Sec. & Exch. Comm'n v. Ralston Purina Co*., 346 U.S. 119, 125 (1953) ("An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.'" (quoting 15 U.S.C. § 77d)). Considering the lack of precision in the definition of "public offering," it is debatable whether Scott's one-off observation can support a reasonable basis to believe that Askew publicly offered Vantage securities. We cannot, therefore, conclude that the District Court based its Rule 11 decision on a clearly erroneous assessment of the facts in concluding that Plaintiffs' Misrepresentation Claim violated Rule 11(b)(3).

21

### b. The 10b-5 Securities Fraud Claim

Finally, the District Court did not err in determining that Plaintiffs' 10b-5 Securities Fraud Claim did not violate Rule 11. First, the District Court properly articulated the elements of a 10b-5 claim.[10] Second, the District Court reasonably applied the relevant facts, emphasizing Plaintiffs' pre-filing discussion with an accountant and Plaintiffs' review of documents showing Vantage's "ominous financial position." JA 29. The District Court also noted Plaintiffs' observation that Askew failed to rebut Plaintiffs' contention that he made false representations—instead, Askew focused on Plaintiffs' failure to establish reliance and loss causation. While it is true that the District Court summarily dismissed the 10b-5 Securities Fraud Claim, courts must ensure that Rule 11 "not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). Because the District Court did not clearly err in its assessment of the facts, we conclude that there was no abuse of discretion in that Court's determination that Plaintiffs had a reasonable basis to allege securities fraud.

---

[10] The elements are: "(1) a material misrepresentation (or omission); (2) scienter . . . ; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (6) 'loss causation.'" *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (emphasis omitted)).

## B. Rule 11 Sanctions

### 1. The District Court did not abuse its discretion in declining to award Askew attorneys' fees.

As discussed above, the PSLRA creates a presumption in favor of awarding attorneys' fees when a complaint constitutes a "substantial failure" to comply with Rule 11. 15 U.S.C. § 78u-4(c)(3)(A)(ii). The PSLRA does not, however, define "substantial failure," nor has this Court yet expounded on the meaning or reach of the term. Given the lack of statutory or Third Circuit guidance, the District Court adopted the Second Circuit's approach in *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212 (2d Cir. 2002). There, the Second Circuit articulated a two-step test for assessing whether a complaint containing multiple counts constituted a substantial failure. First, a court must determine whether the pleading of one or more causes of action violated Rule 11. *Id.* at 223. Assuming, as the District Court determined here, that some of the claims violated Rule 11 while others did not, a court should proceed to step two.[11] In step two, a court analyzes all the claims collectively and assesses whether the claims that do not violate Rule 11 "are of a quality sufficient to make the suit as a whole nonabusive." *Id.* If so, the complaint is not a substantial failure, and the presumption in favor of attorneys' fees does not arise.

---

[11] While it is likely that a complaint lacking even a single claim for which there was a reasonable basis would constitute a "substantial failure," that issue is not before us.

23

The Fourth Circuit reasoned similarly in *Morris v. Wachovia Securities, Inc.*, adopting a somewhat modified version of *Gurary*'s two-part test. 448 F.3d at 278–79. Specifically, the Fourth Circuit altered the language of step two and held that it "requires an inquiry into whether the complaint's Rule 11(b) violations make the complaint as a whole 'essentially,' 'without material qualification,' 'in the main,' or 'materially' frivolous." *Wachovia*, 448 F.3d at 278–79 (quoting *Gurary*, 303 F.3d at 228 (Walker, C.J., concurring)).

While we have doubts that any difference in the language used by the Second and Fourth Circuits meaningfully alters the inquiry required of a court, the Fourth Circuit's approach is more closely tied to the definition of "substantial." *See* Black's Law Dictionary 1428–29 (6th ed. 1990) (defining "[s]ubstantially" as "[e]ssentially," "without material qualification," "in the main," "in substance," or "materially"); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (defining "substantially justified" as "justified in substance or in the main"). And in general, the two-step framework strikes us as a sensible balance of the PSLRA's "twin goals" of "curb[ing] frivolous, lawyer-driven litigation" while also "preserving [] investors' ability to recover on meritorious claims." *Queen*, 503 F.3d at 326 (quoting *Tellabs*, 551 U.S. at 322)). We therefore adopt a streamlined version of the Fourth Circuit's approach to assessing whether a complaint substantially violates Rule 11. If a court determines that some claims violate Rule 11 and others do not, the court should examine the claims collectively to assess whether the Rule 11 violations render the complaint, as a whole, frivolous.

24

Applying this framework, we conclude that the District Court did not abuse its discretion in determining that Plaintiffs' Complaint was not a substantial Rule 11 violation. First, the District Court applied a proper legal framework. In assessing whether there was a "substantial failure," the District Court asserted that it must determine whether the Rule 11 violations it found "were sufficiently substantial to make the complaint as a whole frivolous." JA 30 (emphasis omitted). This closely tracks the legal framework we articulated above. So the District Court did not abuse its discretion in describing the legal standard because it did not articulate an erroneous view of the law.

Second, the District Court correctly applied the facts to the legal framework. It was reasonable for the District Court to conclude that the "gravamen" of Plaintiffs' Complaint against Askew was that he made misrepresentations about Vantage that tricked Plaintiffs into making an investment that was much riskier than Askew represented. *See* JA 31; JA 127, Compl. ¶ 29 ("Plaintiffs made these investments and purchased Vantage Corporation stock as a result of direct misrepresentations and omissions made to them by Askew."). Therefore, it was also reasonable to conclude that the 10b-5 Securities Fraud Claim was the "heart" of the Complaint. *Id.* And finally, where, as here, a district court reasonably determines that the "heart" of a complaint did not violate Rule 11, it is a proper exercise of discretion to conclude that the complaint did not substantially violate Rule 11. Accordingly, we agree with the District Court that Plaintiffs' Rule 11 violations did not constitute a substantial failure. The PSLRA's attorney fee presumption is thus inapplicable here.

25

### 2. The District Court abused its discretion in declining to impose any sanctions.

Finally, we address whether the District Court abused its discretion in declining to impose sanctions after finding Rule 11 violations. Because the text of the PSLRA makes the imposition of sanctions mandatory after a court determines that a party violated Rule 11, we conclude that the District Court abused its discretion in declining to impose any form of sanctions.

In interpreting a statute, "[w]e begin, as always, with the text of the law." *United States v. Ashurov*, 726 F.3d 395, 398 (3d Cir. 2013). When a "statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Doe I v. Scalia*, 58 F.4th 708, 715 (3d Cir. 2023) (internal quotation marks omitted). Here, because the text of the PSLRA is plain, 15 U.S.C. § 78u-4-(c)(2), our inquiry begins and ends with that plain meaning.

The PSLRA provides that a court "shall" impose sanctions when it finds that a party has violated Rule 11. *Id.* The word "shall" is "mandatory" and "normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). For example, before Rule 11 was amended in 1993, it dictated that a court "shall impose" an "appropriate sanction" against a party who violated the rule. *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 810 (3d Cir. 1992) (quoting Rule 11 before its 1993 amendment). We construed that language to

26

mean that "[s]anctions for violating Rule 11 [were] mandatory," and further held that a district court "abuse[s] its discretion by failing to award sanctions." *Id.* at 810–11. Further, our sister circuits that have construed the PSLRA's use of "shall" have all concluded that it mandates sanctions when a court determines that Rule 11 has been violated. *See Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 276 (4th Cir. 2006) ("Because the [PSLRA's] sanctions 'instruction comes in terms of the mandatory "shall,"' . . . the district court must impose sanctions for each violation found." (quoting *Lexecon*, 523 U.S. at 35)); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 636 (11th Cir. 2010) ("[T]he PSLRA's provisions eliminate a district court's discretion . . . in determining whether to impose sanctions following a finding of a Rule 11(b) violation."); *Citibank Glob. Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 32 (1st Cir. 2009) (same); *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 178 (2d Cir. 1999) ("Under the PSLRA [] the district court was required to impose sanctions."). Accordingly, pursuant to the plain meaning of "shall," a district court *must* impose Rule 11 sanctions when it finds Rule 11 violations in proceedings governed by the PSLRA. The District Court's decision to forgo sanctions was an abuse of discretion, so we will vacate the District Court's order insofar as it determined that sanctions against Plaintiffs were not required.

On remand, the District Court is instructed to impose, in its discretion, some form of sanction against Plaintiffs in accordance with Rule 11. We take no position on what a proper sanction would be here, acknowledging as we must that the District Court is better situated to make that determination. We

27

do note that the available options run the gamut from an award of attorneys' fees—as Askew initially requested—to "a written order admonishing by name the individual lawyers responsible for the Rule 11(b) violations that the district court identified in [Plaintiffs'] complaint[]." *Wachovia*, 448 F.3d at 285 (where plaintiffs had engaged in insubstantial violation of Rule 11, vacating denial of sanctions and remanding with instructions to name and admonish the lawyers responsible for the violation).

## IV.    CONCLUSION

While we will affirm most of the District Court's Rule 11 order, the PSLRA's text requires that some sanction be imposed where, as here, a party violates Rule 11. Although we will not declare what is an appropriate sanction, we will vacate and remand this case to the District Court to impose such Rule 11 sanctions as that Court considers, in the exercise of its discretion, to be appropriate.