**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2611
_____

ERIC DAIMLER,
                                          Appellant

v.

CHRIS MOEHLE; ROBOTICS HUB FUND 1, LLC; COAL HILL VENTURES LLC
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:18-cv-00165)
District Judge:  Honorable Marilyn J. Horan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 13, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO, *Circuit Judges*.

(Opinion filed: May 9, 2025)
_____

OPINION[*]
_____

MONTGOMERY-REEVES, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Two investors interested in early-stage robotics companies, Eric Daimler and Chris Moehle, decided to combine their talents and create a joint venture. Things did not go as planned, so Daimler sued Moehle and their joint companies. The District Court decided against Daimler in three different orders, and Daimler appealed those orders. For the reasons explained below, we will affirm in part and vacate and remand in part the District Court's orders.

## I.   BACKGROUND

In 2015, Daimler and Moehle met through a mutual friend, David Mawhinney. According to Daimler, Moehle represented to him that he had obtained $20 million in funding from General Electric (the "GE Representation"). So the two decided to invest in early-stage robotics companies together.

In March 2016, Daimler and Moehle agreed to become co-equal members of two companies: Robotics Hub Fund 1, LLC ("Robotics Hub") and Coal Hill Ventures LLC ("Coal Hill") (collectively, the "Companies" and collectively with Moehle, "Defendants"). In connection with this new joint venture, Daimler and Moehle each signed four agreements: two operating agreements, one with Robotics Hub and the other with Coal Hill (the "Operating Agreements"), and Daimler's and Moehle's respective award agreements with both Robotics Hub and Coal Hill (the "Award Agreements") (collectively with the Operating Agreements, the "Agreements").

The Agreements awarded both Daimler and Moehle 42 common units in each of the Companies, subject to certain vesting conditions. But Moehle's and Daimler's vesting conditions varied. Under the Award Agreements, 20% of Moehle's common

2

units would vest on March 23, 2017, with 1.6666% vesting ratably on the last day of each month thereafter until March 23, 2021. Daimler's Award Agreements had an additional condition. Namely, 20% of Daimler's common units would vest on the date when he provided 12 consecutive and uninterrupted months of full-time services so long as he started full-time employment with the Companies no later than March 23, 2017. Assuming this condition was met, Daimler's remaining units would vest on a pro rata basis on the last day of each month until March 23, 2021.

Moehle immediately went to work for the Companies, but Daimler did not. Instead, Daimler planned to begin full-time employment with the Companies in January 2017, after he completed a White House Fellowship (the "Fellowship"). But Daimler made financial contributions to the Companies from the inception of the joint venture until the end of the Fellowship.[1]

In January 2017, as the Fellowship ended, Daimler sought to transition to full-time work with the Companies. But this transition required a vote by the Companies' Boards of Managers because Moehle did not support Daimler's return to the Companies. The Boards consisted only of Daimler and Moehle, so perhaps unsurprisingly, the Boards deadlocked with Moehle voting against Daimler's return and Daimler voting for it. With the Boards deadlocked, they referred the matter to a "Deadlock Adviser" for a tiebreaking vote under Section 5.5(c) of the Operating Agreements.

---

[1] In the First Amended Complaint, Daimler alleged that Moehle used some of the money that Daimler contributed to the Companies for Moehle's personal expenses. Daimler also alleged that not all the money that Moehle used was repaid to him.

3

In March 2017, Mawhinney, the Deadlock Adviser, cast the tiebreaking vote. Mawhinney sided with Moehle, concluding, in part, that the Companies lacked the financial capacity to pay Daimler on a full-time basis. Because Daimler did not begin working full-time for the Companies before March 2017, none of his common units vested under the Award Agreements.

After his dismissal, Daimler competed with the Companies for their clients, interfered with the Robotics Hub website, and altered how Robotics Hub's website appeared in Google Searches. Then, Daimler sued Moehle and the Companies.

Daimler asserted a claim for breach of the implied covenant of good faith and fair dealing against Robotics Hub (the "Good Faith Claim"), unjust enrichment claims against each Defendant, and other contract-related claims like fraud in the inducement. The Companies filed counterclaims seeking damages for fraudulent misrepresentation and violations of the Lanham Act, Computer Fraud and Abuse Act, and Anti-Cybersquatting Consumer Protection Act (collectively, the "Intellectual Property Claims").

The District Court issued three orders relevant to this appeal. First, it dismissed Daimler's Good Faith Claim and unjust enrichment claims for failure to state a claim. Second, the District Court granted summary judgment for Defendants on Daimler's fraud in the inducement claim. These decisions left only the Companies' Intellectual Property Claims and a fraudulent misrepresentation claim for trial.

After a three-day trial, a jury returned a verdict in favor of the Companies on the Intellectual Property Claims. The Companies then moved for attorney's fees under the Lanham Act. Daimler moved for a new trial on damages or remittitur and opposed the

Companies' motion for attorney's fees. The District Court ultimately found that Daimler's bad faith behavior met the Lanham Act's exceptionality requirement and awarded the Companies attorney's fees. The District Court also denied Daimler's motion for a new trial on damages or remittitur. Daimler appealed.

## II.    DISCUSSION[2]

Daimler argues on appeal that the District Court erred in resolving the motion to dismiss, the motion for summary judgment, and the post-trial motions against him. We address each decision in turn.

### A.    The Motion to Dismiss Decision

Daimler challenges the District Court's order dismissing his Good Faith Claim against Robotics Hub and unjust enrichment claims against each Defendant. We agree that the District Court properly dismissed the Good Faith Claim, but it erred in dismissing the unjust enrichment claims.[3]

---

[2] The District Court had jurisdiction over this case under 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

[3] We review de novo a district court's decision to grant a motion to dismiss. *Kalu v. Spaulding*, 113 F.4th 311, 324 (3d Cir. 2024) (citing *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 1.      The Good Faith Claim

Under Delaware law,[4] "[t]he implied covenant of good faith is a 'cautious enterprise' that 'is "best understood as a way of implying terms in [an] agreement," whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions.'" *Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisitions, LLC*, 202 A.3d 482, 506–07 (Del. 2019) (first quoting *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010); and then quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005)).  But "the implied covenant 'does not apply when [a] contract [between the parties] addresses the conduct at issue,' . . . only 'when the contract is truly silent' concerning the matter at hand." *Id.* (first quoting *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015); and then quoting *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1033 (Del. Ch. 2006)); *see also Dunlap*, 878 A.2d at 441 ("[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement.").  This is because "Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events [occur] that could have been[, but were not,] anticipated." *Nemec*, 991 A.2d at 1128.

The duty of good faith and fair dealing cannot save Daimler from the text of the Agreements.  Not only did Daimler fail to negotiate a guarantee of his future full-time employment with Robotics Hub, but his Agreements made clear that they did not "confer

---

[4] The Robotics Hub Agreements are subject to Delaware law.

upon [Daimler] any right to be retained by or in the employ or service of" the Companies. J.A.190. And Daimler signed the Award Agreements as written *after* he accepted the Fellowship that prevented him from working full-time with the Companies. So, at signing Daimler knew that: (1) he was not employed full-time with the Companies; and (2) he was not guaranteed a full-time position. Despite this knowledge, Daimler willingly accepted an Award Agreement predicated on his not-yet-manifest full-time status. It is not a court's place to save Daimler from these contractual decisions. "Parties have a right to enter into good and bad contracts[;] [Delaware] law enforces both." *Nemec*, 991 A.2d at 1126. Thus, we will affirm the District Court's dismissal of the Good Faith Claim.

## 2.      Unjust Enrichment

Under Pennsylvania law,[5] an unjust enrichment claim requires: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; (3) and "acceptance and retention of such benefit[] under such circumstances that it would be inequitable for [the] defendant to retain the benefit without payment of value." *Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 687 (Pa. Super. Ct. 2022) (quoting *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa. Super. Ct. 2017)). "[I]t has long been held in [Pennsylvania] that the doctrine of unjust enrichment is inapplicable when the relationship between [the] parties is founded upon a written agreement or

---

[5] The District Court applied Pennsylvania law to Daimler's unjust enrichment claims, and neither party disputes its application on appeal.

7

express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (quoting *Third Nat'l & Tr. Co. of Scranton v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa. 1945)). But when a plaintiff does not solely predicate his contract-related claims on an express agreement, he may plead an unjust enrichment claim in the alternative to a breach of contract claim under both the Federal Rules of Civil Procedure and Pennsylvania law. Fed. R. Civ. P. 8(d)(2); Pa. R. Civ. P. 1020(c); *see, e.g.*, *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009) ("We find that appellants may, indeed, plead . . . breach of contract, in the alternative with a cause of action under a theory of unjust enrichment."). Daimler did just this.

Daimler's allegations were not solely predicated on the Agreements.[6] Instead, Daimler permissibly alleges that even if he cannot recover under the Agreements, he can recover the value of his financial contributions under quasi-contractual principles.[7] Specifically, Daimler adequately alleged that: (1) he conferred financial benefits on Moehle and the Companies through his contributions; (2) the Companies and Moehle

---

[6] The District Court correctly ignored the allegations that were predicated on the Agreements (*e.g.* Daimler's allegations that he is entitled to the "value of . . . forty-two common units") because Daimler was not entitled to collect under the Agreements. *See, e.g.*, J.A.319.

[7] *See* J.A.306–07 ("Moehle wrongfully used some of Daimler's capital and financial contributions to pay for his personal expenses, including his mortgage payments and family travel expenses, only a small portion of which has been repaid to Daimler."); J.A.314 ("Robotics Hub has not fully reimbursed Daimler for all of his capital and other financial contributions . . .."); J.A.319 ("Coal Hill has not fully reimbursed Daimler for all of his capital and other financial contributions . . ..").

utilized those monies for their own benefit; and (3) neither the Companies nor Moehle fully compensated him for these contributions despite the Companies and Moehle benefitting from his contributions. Accordingly, we will vacate the District Court's order dismissing the unjust enrichment claims against each Defendant and remand for proceedings consistent with this opinion.

**B.     The Summary Judgment Decision**

Daimler next challenges the District Court's order granting summary judgment for Defendants on Daimler's fraud-in-the-inducement claims. The District Court held that Daimler's self-serving affidavit and deposition testimony could not establish a genuine issue of material fact with respect to two fraud-in-the-inducement elements: representation and justifiable reliance. The District Court erred.[8]

 "[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment," even when "self-serving." *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018) (quoting *Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314, 320, 321 n.2 (3d Cir. 2014)); *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 501 (3d Cir. 1995) ("[T]he Supreme

---

[8] We review de novo a district court's decision granting summary judgment. *Glaesener v. Port Auth. of N.Y. & N.J.*, 121 F.4th 465, 467 (3d Cir. 2024) (citing *Tundo v. Cnty. of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019)). "Summary judgment is appropriate only 'if, when viewed in the light most favorable to the [nonmoving party], there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 221 (3d Cir. 2024) (alteration in original) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003)).

Court has made it clear that self-serving testimony may be utilized by a party at summary judgment."). And it follows that similarly self-serving deposition testimony, based on personal knowledge, can create a genuine issue of material fact.

But self-serving testimonial evidence has its limitations. As relevant here, conclusory testimonial evidence cannot defeat summary judgment. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). Testimonial evidence is conclusory if it fails to set "forth specific facts that reveal a genuine issue of material fact" or sets forth opinions and conclusions rather than specific factual assertions. *Kirleis*, 560 F.3d at 161 (first citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002); then citing *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985); and then citing Fed. R. Civ. P. 56(e)(2)).

We cannot conclude on the record before us that Daimler's January 22, 2022 affidavit (the "Affidavit") and February 24, 2021 deposition testimony (the "Deposition Testimony") were conclusory. With respect to the representation element of his fraudulent inducement claim, Daimler averred, under penalty of perjury, that he remembered "<u>with absolute and unequivocal certainty, [that] Moehle[] represent[ed] to [him], and to numerous potential investors, that GE had committed to invest $20 [m]illion</u>" in the Companies. J.A.1107 (underlining in original). He continued that "[b]ut for [the GE Representation], [he] never would have walked away from [his own investment project] . . . which was on the verge of receiving two (2) investments totaling

10

$10 [m]illion." *Id.* Daimler also identified: (1) the date the representation was made;[9] (2) details of the representation made;[10] and (3) the way the representation was made: telephonically. Daimler's testimony sufficiently set forth specific facts to create a genuine issue of material fact regarding the GE representation. Thus, the District Court erred in holding that the Affidavit and Deposition Testimony could not defeat summary judgment on the representation element because they were conclusory.

The same is true for Daimler's testimony regarding justifiable reliance. Contrary to the District Court's holding, there is no obligation to corroborate self-serving testimonial evidence to survive summary judgment. *See, e.g.*, *Paladino* 885 F.3d at 209 ("[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment" (quoting *Lupyan*, 761 F.3d at 321 n.2)). And Daimler introduced self-serving—but specific and non-conclusory—testimony that he did not conduct further inquiry into the GE Representation because Moehle specifically told him not to. Thus, the District Court erred in holding that the Affidavit and Deposition Testimony were conclusory because they lacked corroboration. As such, we will vacate the District Court's summary

---

[9] Daimler recalled that Moehle made the original GE representation to him either on August 18, 2015, or August 19, 2015.

[10] Daimler testified that Moehle represented that "GE would be investing at least $20 million as soon as they cleared a regulatory issue of spinning out a financial arm." J.A.736.

judgment order as to fraud-in-the-inducement claim and remand for further proceedings consistent with this opinion.[11]

## C. The Post-Trial Decision

Finally, Daimler argues that the District Court erred in denying his request for a new trial or remittitur and in granting the Companies attorney's fees. We disagree.[12]

As to his first challenge, Daimler contends that the District Court erred by allowing a damage award that was "speculative, excessive, and indicate[d] confusion or a compromise on the part of the jury." Opening Br. 48. But the $225,000 damage award was not contrary to the clear weight of the evidence, speculative, or excessive; nor did it indicate confusion or compromise by the jury. Instead, as the District Court held, the jury instructions provided ample opportunity for an award greater than the $51,467 that the

---

[11] Daimler also contends that the District Court improperly granted summary judgment on his breach of contract claim against Coal Hill. But the District Court correctly concluded that no contract existed outside the Agreements, so we will affirm its dismissal of Daimler's breach of contract claim.

[12] We review for an abuse of discretion orders (1) denying a motion for a new trial, (2) ruling on a remittitur motion, and (3) awarding attorney's fees under the Lanham Act. *Jester v. Hutt*, 937 F.3d 233, 238 (3d Cir. 2019) (new trial and remittitur standard of review); *Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 151 (3d Cir. 2024) (Lanham Act attorney's fees standard of review). "A district court abuses its discretion when it renders a decision that is 'contrary to reason or without a reasonable basis in law and fact.'" *Scott v. Vantage Corp.*, 64 F.4th 462, 472 (3d Cir. 2023) (quoting *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994)). In applying an abuse-of-discretion standard, we do not ask whether "'we would make the same precise determinations' that we are reviewing," but "whether the district court 'based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

Companies requested.[13]  Therefore, it was plausible for the jury to conclude that "the out-of-pocket expenses, damage to the Companies' goodwill, and the shortfalls in fundraising efforts" amounted to $225,000.  J.A.9.  And contrary to Daimler's contentions, the Companies' counsel's request that the jury return a verdict of a certain figure is not a "judicial admission" regarding damages that is binding on the Companies.  *Cf. Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972).  Accordingly, the District Court did not abuse its discretion in denying Daimler's new trial and remittitur request.

As to his second challenge, Daimler argues that the District Court erred in granting attorney's fees under the Lanham Act's exceptionality standard, especially where the Companies did not provide adequate proof of their hours billed.  But the District Court committed no error in awarding the Companies attorney's fees.  Under the Lanham Act, "a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) (quoting *Octane*

---

[13] At the conclusion of trial, the District Court instructed the jury that "[d]amages consist of the amount of money required to compensate the Companies for the injury caused by . . . Daimler's infringement and/or false advertising[,]" which includes the difference between "the value of [the] Companies' goodwill before the infringement and/or false advertising with the value of the goodwill after the infringement and/or false advertising." J.A.6.  The District Court also made clear to the jury that "[d]amages may be awarded even though they cannot be calculated with mathematical certainty[;]" and that it "should award an amount of money damages that will fairly and adequately compensate the [C]ompanies for the harm caused by . . . Daimler." J.A. 7 (emphasis omitted).  Daimler does not contend that these jury instructions were legally inaccurate or misleading in any way.

*Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553–54 (2014)). "Whether litigation positions or litigation tactics are 'exceptional' enough to merit attorneys' fees must be determined by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Id.* (quoting *Octane Fitness*, 572 U.S. at 554)). Blanket disagreements with discretionary factual determinations are not sufficient for an abuse of discretion finding. *See Jester*, 937 F.3d at 238.

The District Court concluded, relying on *Octane Fitness*, that "the jury found [that] . . . Daimler's conduct was willful and in bad faith." J.A.10. This was based on evidence that after Daimler's departure, he "took the Companies' marketing materials, redirected" the Robotics Hub website to his personal business, and attempted to compete with the Companies. *Id.* The District Court also concluded Daimler belatedly admitted culpability for the Intellectual Property Claims after forcing the Companies to "initiate, litigate, and try their Intellectual Property Claims and bear the expenses of the same" for nearly three-and-a-half years. J.A.10–J.A.11. These conclusions are supported in the record. Thus, the District Court did not abuse its discretion in considering these facts and concluding that Daimler acted in bad faith. Nor did the District Court abuse its discretion by determining that $129,183 was reasonable based on the record. Thus, we will affirm the post-trial orders.

## III.    CONCLUSION

For the reasons set forth above, we will affirm the District Court's: (1) motion-to-dismiss order with respect to the Good Faith Claim; (2) summary-judgment order with respect to the breach of contract claim; and (3) post-trial orders. We will vacate the

14

District Court's order dismissing Daimler's unjust enrichment claims, vacate its summary judgment order with respect to Daimler's fraud-in-the-inducement claims, and remand for further proceedings consistent with this Opinion.